Merrimack
No. 2003-065

NEW HAMPSHIRE DEPARTMENT OF HEALTH AND HUMAN SERVICES

v.

TERRY L. BONSER & a.

Submitted: October 21, 2003
Opinion Issued: November 12, 2003

*Peter W. Heed,* attorney general (*Mary P. Castelli,* senior assistant attorney general, on the brief), for the State.

*Terry L. Bonser* and *Mary L. Bonser,* by brief, *pro se.*

DUGGAN, J. The New Hampshire Department of Health and Human Services (department) successfully petitioned the Superior Court (*Fitzgerald,* J.) to enjoin the defendants, Terry and Mary Bonser, proprietors of Cedar Waters Village (CWV), from operating two unlicensed food service establishments. *See* RSA 143-A:11 (1996). The Bonsers appeal. We affirm.

The Bonsers operate CWV, a nudist park in Nottingham, which is open daily from May 15 through September 15. Visitors to CWV include both members and non-members. CWV offers daily and seasonal rates for lot, cottage and campsite rentals as well as a variety of activities including sunbathing, swimming, windsurfing, tennis, horseshoes and fishing.

CWV has two unlicensed food service facilities. The first is a restaurant that serves breakfast for two hours on Saturdays and Sundays. The other is a snack booth that serves sandwiches and snacks, and is open for five hours on Saturdays and Sundays throughout the four-month season.

On September 14, 1999, the department ordered the Bonsers to cease operation of their unlicensed food service establishments. When the Bonsers refused to comply with the order, the department filed a petition for a preliminary and permanent injunction. After a hearing, the superior court granted the petition and denied the Bonsers' motion to reconsider.

On appeal, the Bonsers argue that the Food Service Licensure Act, RSA 143-A:1 *et seq.,* does not apply to the restaurant or snack booth. Alternatively, the Bonsers argue that even if the Food Service Licensure Act applies, the restaurant and snack booth are exempt from regulation because they qualify as temporary or occasional food service establishments.

When construing a statute, we begin by examining the language of the statute, ascribing the plain and ordinary meaning to the words used by the legislature. *Franklin Lodge of Elks v. Marcoux,* 149 N.H. 581, 585 (2003). We do not consider words and phrases in isolation but rather within the context of the statute as a whole. *Id.* This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent. *State v. Foss,* 148 N.H. 209, 211 (2002). Because the interpretation of a statute is a question of law,

we review the superior court's decision *de novo*. *Franklin Lodge of Elks*, 149 N.H. at 585-86.

The Food Service Licensure Act makes it "unlawful for any person, unless exempted under [the statute], to operate a food service establishment . . . within the state without having obtained a food service license." RSA 143-A:4 (1996). A food service establishment is defined as

> any fixed or mobile, attended or unattended restaurant; coffee shop; cafeteria; short order cafe; luncheonette; grill; tearoom; sandwich shop; . . . private or public organization or institution, whether profit or nonprofit, which routinely serves food; catering kitchen; commissary, or similar place in which food or drink is prepared for sale or for service on the premises or elsewhere; and any other eating and drinking establishment or operation in which potentially hazardous food is served or provided for the public with or without charge.

RSA 143-A:3, IV (Supp. 2002). Temporary food service establishments and occasional food service establishments are exempt from licensure. RSA 143-A:5, III (Supp. 2002). A temporary food service establishment is one "which operates at a fixed location for a temporary period of time not exceeding 2 weeks, in connection with a fair, carnival, circus, public exhibition, or similar transitory gathering." RSA 143-A:3, VIII. An occasional food service establishment operates no more than four days during a thirty-day period. RSA 143-A:3, V.

As set forth above, the Food Service Licensure Act provides a list of specific establishments subject to regulation and contains a catch-all provision which includes "any other eating and drinking establishment or operation in which potentially hazardous food is served or provided for the public." RSA 143-a:3, IV. The Bonsers argue that the department has authority to regulate only those establishments that serve the public, and that nudists cannot be considered members of the public because they are not permitted to participate in nudist activities in public without violating the public indecency statute.

█ We conclude that the Bonsers' interpretation is not supported by the language of the statute. A plain reading of the statute clearly indicates that a private or public organization which routinely serves food qualifies as a food service establishment and is subject to regulation. *Id.* Because CWV is a private organization which serves food every Saturday and Sunday from May 15 through September 15, the restaurant and snack booth both

fall within the definition of a food service establishment. Thus, they are subject to regulation by the department.

The Bonsers argue that this construction of the statute is undermined by the final clause of RSA chapter 143-A:3, IV, which provides that "any other eating and drinking establishment or operation in which potentially hazardous food is served or provided for the public" is considered a food service establishment. In the Bonsers' view, this clause limits the department's authority to regulating only those establishments that serve the public.

■ We disagree. The catch-all provision cited by the Bonsers is not the only provision in RSA 143-A:3, IV that subjects the restaurant and snack booth to regulation. As set forth above, the restaurant and snack booth fall within a specific provision of the statute which states that "a private or public organization ... which routinely serves food" is a food service establishment subject to regulation by the department. Because the restaurant and snack booth fall within this specific provision of the statute, we need not determine whether they additionally are subject to regulation under the catch-all provision cited by the Bonsers.

■ We next address the Bonsers' argument that the restaurant and snack booth are exempt from regulation by the department because they qualify as either temporary food service establishments or occasional food service establishments. This argument is without merit.

A temporary food service establishment is one that operates for a temporary period, not to exceed two weeks. RSA 143-A:3, VIII. Because the restaurant and snack booth operate on weekends from May 15 through September 15, the plain language of the statute indicates that they cannot qualify as temporary food service establishments.

An occasional food service establishment operates for no more than four days during a thirty-day period. RSA 143-A:3, V. Because the restaurant and snack booth are open every weekend from May 15 though September 15, they operate for more than four days during a thirty-day period. Thus, they also cannot qualify as occasional food service establishments.

We have considered the Bonsers' remaining arguments and find them to be without merit. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

DALIANIS, J., concurred; SMITH, SULLIVAN and BURLING, JJ., superior court justices, specially assigned under RSA 490:3, concurred.