Carroll
No. 2004-023

GORDONVILLE CORPORATION N.V.

v.

LR1-A LIMITED PARTNERSHIP

Argued: June 17, 2004
Opinion Issued: August 31, 2004

*Robert N. Zimmermann*, of Tamworth, and *Robert C. Wunder*, of Ossipee (*Mr. Zimmermann* and *Mr. Wunder* on the brief, and *Mr. Zimmermann* orally), for the plaintiff.

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* and *William B. Pribis* on the brief, and *Mr. Rayment* orally), for the defendant.

GALWAY, J. The defendant, LR1-A Limited Partnership, appeals orders from the Superior Court (*O'Neill*, J.) denying both its motion to dismiss and its cross-motion for summary judgment. We affirm.

The relevant facts follow. Lakeview Village, Inc. and its successor (Lakeview) owned property in Wakefield. The defendant held two mortgages on that property. In May 1997, the Town of Wakefield (Town) notified the defendant of its intent to take the property because of unpaid property taxes, and on June 30, 1997, the property was deeded to the Town by tax deed. As a result of the tax deed, the defendant's mortgages were extinguished. *See* RSA 80:77-a (2003).

In July 2000, Lakeview paid all outstanding taxes and associated costs to the Town in order to repurchase the property pursuant to RSA 80:89. Lakeview obtained the necessary funds from the plaintiff, Gordonville Corporation N.V., which, in turn, acquired the property from Lakeview immediately after it was repurchased from the Town.

Upon learning that Lakeview had repurchased the property, the defendant notified all interested parties of its intent to hold a foreclosure sale of the property on January 23, 2003, given Lakeview's continuing default on the original mortgages. The plaintiff filed a petition to enjoin the foreclosure sale, arguing that the defendant's original mortgages were extinguished when the property was deeded to the Town. On the day of the foreclosure sale, following a hearing, the court enjoined the foreclosure on the express condition that the plaintiff post a $25,000 bond that afternoon.

No bond was posted, and the defendant proceeded with the foreclosure sale.

Following the foreclosure sale, the defendant moved to dismiss the plaintiff's lawsuit, arguing that pursuant to RSA 479:25, II (2001), the only issues which could properly be litigated following the foreclosure sale were issues of notice and issues challenging the conduct of the foreclosure sale itself. The court denied the motion, and the plaintiff subsequently filed a motion for summary judgment, arguing that RSA 80:89, IV did not revive the defendant's mortgages. The defendant objected and filed its own cross-motion for summary judgment. The court ultimately granted summary judgment in favor of the plaintiff, simultaneously denying the defendant's cross-motion for summary judgment.

On appeal, the defendant argues that the trial court erred in denying its motion to dismiss, as well as its cross-motion for summary judgment. Moreover, the defendant argues that the court likewise erred in granting summary judgment in favor of the plaintiff.

*I. Summary Judgment*

The defendant first contends that the court erred in denying its cross-motion for summary judgment and granting the plaintiff's motion. Specifically, it argues that RSA 80:89, IV revived its original mortgages.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Stateline Steel Erectors v. Shields*, 150 N.H. 332, 334 (2003). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

The question before us is one of statutory interpretation—whether RSA 80:89, IV revived the defendant's mortgages. This court is the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole. *Appeal of Ann Miles Builder*, 150 N.H. 315, 318 (2003). When the issue raised presents a new question of statutory construction, we begin our analysis with an examination of the statutory language. *Id.* We do not consider words and phrases in isolation but rather within the context of the statute as a whole. *N.H. Dep't of Health & Human Servs. v. Bonser*, 150 N.H. 250, 251 (2003). This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme. *Id.* When a statute's language is plain and unambiguous, we need not look beyond it for further indication of legislative intent, and we refuse to consider what the legislature might have said or add language that the

legislature did not see fit to incorporate in the statute. *Balke v. City of Manchester*, 150 N.H. 69, 71 (2003).

RSA 80:89, entitled "Notice to Former Owner and Opportunity for Repurchase," sets forth a detailed procedure by which prior owners may reacquire property conveyed to municipalities through tax deed. In enacting this scheme, the legislature sought to prohibit towns from too harshly penalizing delinquent taxpayers by refusing to resell them their property. *See* 16 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, MUNICIPAL LAW AND TAXATION § 43.11A, at 126-27 (Supp. 2003); *see also Thomas Tool Servs. v. Town of Croydon*, 145 N.H. 218, 220 (2000).

Specifically, RSA 80:89, I, sets forth the first step in the notification and repurchase process. It states, in part:

> Between 120 and 90 days prior to the offering for sale or conveyance by a municipality of property which is acquired by tax deed on or after the effective date of this section, the municipal governing body . . . shall send notice by certified mail, address service requested, return receipt requested, to the last known post office address of the owner of the property at the time of the tax deed, if known, or to the person to whom notice of the impending tax deed was given under RSA 80:77.

RSA 80:89, II then requires, in part:

> Within 30 days after the notice required by paragraph I, or if no such notice is received, at any time within 3 years after the date of recording the tax deed, any former owner of the property may give notice by certified mail, return receipt requested, of intent to repurchase the property from the municipality, and stating that such owner is ready, willing, and able to pay all back taxes, interest, costs and penalty, as defined in RSA 80:90.

Once these notice requirements have been satisfied, RSA 80:89, III provides that: "The deed from the municipality upon such repurchase shall convey the municipality's interest in the property, or such portion as has not been previously disposed of by the municipality, to all record former owners in the same proportional undivided interests as the former owners of record." Pursuant to RSA 80:89, IV:

> The former owners' title upon repurchase shall be subject to any liens of record against the property as of the time of the tax deed to the municipality, and subject to any leases, easements, or other encumbrances as may have been granted or placed on the property by the municipality.

The statutory scheme further specifies that "the date of sale or conveyance of the property shall mean the date the municipality enters into a binding contract to convey the property to a third party buyer." RSA 80:89, VII.

■ We agree with the trial court's ruling that RSA 80:89 is inapplicable to the instant case. RSA 80:89, I, makes clear that the statutory scheme governs "property which is acquired by tax deed on or after the effective date of this section." The phrase "on or after the effective date of this section" necessarily modifies the "tax deed," not the "offering for sale." To interpret RSA 80:89, I, to apply to all "offering[s] for sale or conveyance[s] by a municipality . . . on or after the effective date of this section," would render the latter phrase surplusage, as the effective date of the statute is already known. Given that the legislature is not presumed to waste words or enact redundant provisions, we cannot adopt that interpretation. *See Marcotte v. Timberlane/Hampstead School Dist.*, 143 N.H. 331, 339 (1999). Contrary to the defendant's claims, then, it is the date of the tax deed, not the date of the transfer of property back to Lakeview, that is determinative.

Because RSA 80:89 took effect on June 25, 1998, the statutory scheme only applies to property acquired by tax deed on or after that date. Although in this case, the property was repurchased by Lakeview in July 2000, it was acquired by the Town by tax deed on June 30, 1997—almost a full year prior to the effective date of RSA 80:89. As such, RSA 80:89, IV does not revive the defendant's original mortgages, as it does not govern this transaction in the first instance.

The defendant argues that the date of the tax deed set forth in RSA 80:89, I, applies only to the notification provisions of the statutory scheme and therefore, is inapplicable to RSA 80:89, IV. We disagree, as that interpretation would require us to interpret the statute in isolation, rather than in the context of the entire statutory scheme. *See N.H. Dep't of Health & Human Servs.*, 150 N.H. at 251.

Next, the defendant argues that RSA 80:89, IV merely codifies the common law principle that "a mortgage, previously extinguished by a tax deed, is revived when the original owner redeems his ownership of the property"—a precept long established since *Woodbury v. Swan*, 59 N.H. 22 (1879). It argues that "[e]ven if RSA 80:89, IV did not operate to revive [its] mortgages . . . the common law rule in *Woodbury v. Swan* did."

We disagree because the common law does not govern here. The alternative tax lien procedure set forth in RSA chapter 80 is a comprehensive statutory scheme. As an obvious and immediate benefit, it affords predictability to interested parties, allowing them to determine the status of the property itself, its title, and its encumbrances at any given

time. As such, we decline to look beyond that detailed framework, as the alternative tax lien procedure is exclusively statutory.

Here, at the time the property was taken by tax deed, the mortgages at issue were extinguished by statute, namely, RSA 80:77-a. If, as we have concluded here, RSA 80:89, IV does not operate to revive those mortgages, they remain extinguished under section 77-a. If statutorily-extinguished mortgages are to be revived, they must be revived by statute.

The defendant further argues that the court's ruling confers a windfall upon the plaintiff. The defendant alleges that it would be inequitable to allow the plaintiff to benefit from certain provisions of the statutory scheme—specifically, those permitting repurchase "without any price competition from potential bidders at a public auction"—while simultaneously escaping any detrimental provisions—namely, those reviving the original mortgages.

Contrary to the arguments of the defendant, we do not believe the plaintiff utilized RSA 80:89 as both a sword and a shield. Although the Town may have chosen to follow the requirements of RSA 80:89 in reselling the property to Lakeview, the Town was under no obligation to do so; as explained above, given the date of the tax deed, RSA 80:89 did not apply to the sale of the property. We agree with the trial court's conclusion: "The Town's erroneous compliance with the provisions of the statute cannot be held to create a right in the defendant[] that did not exist previously. Absent the framework of RSA [80:89], the Town's decision to resell to Lakeview would have been purely discretionary."

Finally, the defendant argues that RSA 80:89, IV affects procedural rights and thus should be applied retroactively. This argument is premised upon the assumption that the statute is silent concerning whether it applies retroactively or prospectively. As we have already determined that RSA 80:89 applies to property acquired by tax deed "on or after the effective date" of the statute, we need not address this argument.

Overall, we cannot conclude that the trial court erred in denying the defendant's cross-motion for summary judgment while granting the plaintiff's motion.

## II. Motion to Dismiss

The defendant next contends that the trial court erred in denying its motion to dismiss. In particular, it argues that RSA 479:25, II barred the plaintiff's action, as it permitted only claims challenging the form or manner of giving notice of the foreclosure sale, or the conduct of the sale itself.

The standard of review in considering a motion to dismiss is whether the plaintiff's allegations are reasonably susceptible of a construction that

would permit recovery. *Silva v. Warden, N.H. State Prison*, 150 N.H. 372, 373 (2003). The facts alleged in the plaintiff's pleadings are assumed to be true and all reasonable inferences are construed in the light most favorable to the plaintiff. *Id.* at 374. If the allegations in the writ constitute a basis for legal relief, we will affirm the trial court's decision to deny the motion to dismiss. *See id.*

Whether RSA 479:25 bars the plaintiff's recovery in this case is the question we must now answer. Concerning foreclosure sales, RSA 479:25, II states, in part:

> Notice of the sale as served on or mailed to the mortgagor shall include the following language:

> "You are hereby notified that you have a right to petition the superior court for the county in which the mortgaged premises are situated, with service upon the mortgagee, and upon such bond as the court may require, to enjoin the scheduled foreclosure sale." Failure to institute such petition and complete service upon the foreclosing party, or his agent, conducting the sale prior to sale *shall thereafter bar any action or right of action of the mortgagor based on the validity of the foreclosure.*

(Emphasis added.) RSA 479:25, II-a further states: "No claim challenging the form of notice, manner of giving notice, or the conduct of the foreclosure sale shall be brought by the mortgagor or any record lienholder after one year and one day from the date of the recording of the foreclosure deed for such sale."

We disagree that RSA 479:25, II precludes the plaintiff's claim in this case. The plain language of the statute indicates that challenges concerning the validity of the foreclosure are statutorily barred only when a party fails to "institute such petition and complete service upon the foreclosing party, or his agent . . . prior to sale." RSA 479:25, II. The trial court ruled that in filing its petition for preliminary and permanent injunctive relief prior to the foreclosure sale, the plaintiff properly "instituted a petition to enjoin foreclosure and served the [defendant] with notice of said petition." The plaintiff's action is not precluded, as it satisfied the statutory requirements necessary to preserve a challenge to the validity of the foreclosure sale, RSA 479:25, II.

Additionally, the plaintiff's failure to post the $25,000 bond ordered by the court to enjoin the foreclosure sale is not fatal to the plaintiff's remaining causes of action. We agree with the trial court that "such a failure does not preclude the [plaintiff] from challenging the validity of the

foreclosure where the aforementioned requirements to such a challenge have been met." Accordingly, the trial court did not err in denying the defendant's motion to dismiss.

*Affirmed.*

BRODERICK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.