697 So.2d 981 (1997)
Charlotte LAGEMAN, as personal representative of the Estate of Frances A. Plum, deceased, as assignee, and D & L Manufacturing Company, Inc., a Florida corporation as assignor, Appellants,
v.
FRANK H. FURMAN, INC., a Florida corporation and Frank H. Furman, Jr., and State Farm Insurance Companies, a Florida corporation, and Bob Lanteri Insurance, Inc., a Florida corporation, Appellees.
No. 95-2388.
District Court of Appeal of Florida, Fourth District.
August 6, 1997.
*982 Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Brian J. Glick of The Glick Law Firm, Boca Raton, for appellants.
Neil Rose, North Bay Village, and Steven J. Chackman of Bernstein & Chackman, P.A., Hollywood, for Appellee-Frank H. Furman, Inc.
CAROLE Y. TAYLOR, Associate Judge.
Appellant, Charlotte Lageman on behalf of the estate of Frances Plum (Lageman), appeals entry of final summary judgment in favor of Appellee, Frank Furman (Furman), in this action for negligent failure to procure adequate insurance coverage arising out of a wrongful death claim. The trial court entered final summary judgment in Furman's favor after determining that Lageman released the insured tortfeasor, D & L Manufacturing Company (D & L), from liability for any excess damages prior to an assignment of D & L's claim against Furman, and thereby, extinguished any cause of action against Furman.
Lageman filed a wrongful death action against D & L on behalf of the estate of Frances Plum, who was killed when an employee of D & L struck her vehicle. The employee was allegedly intoxicated when he crossed the median on 1-95 in Palm Beach County and collided with decedent's vehicle. The policy limit held by D & L with State Farm Insurance Company was $50,000. Prior to trial, Lageman and D & L entered into a settlement agreement in which Lageman agreed to accept the $50,000 policy limit, D & L agreed to entry of a final judgment in the amount of $3,000,000, and Lageman agreed that she would not execute against D & L for any portion of the judgment in excess of the $50,000 limit. The agreement further provided that "in exchange for this agreement," D & L would transfer all of its rights and causes of action against the insurer, Furman, for the alleged failure to procure adequate insurance coverage, and cooperate with Lageman in the prosecution of her action against the insurer. On January 29, 1992, the settlement agreement and Consent Judgment and Stipulation for Entry of Final Judgement were executed by the parties. On February 17, 1992, nineteen days after execution of the Consent Judgment and Settlement Agreement, the parties signed the assignment of D & L's claim against Furman to Lageman.
In the present action, Lageman sued Furman under the assignment from D & L. The complaint alleged that Furman breached its fiduciary duty to D & L and breached its *983 contract with D & L by failing to provide adequate insurance coverage for its automobiles and, thereby, exposed D & L to a judgment in excess of its policy limits.
Furman moved for summary judgment based on the ground that Lageman's claim against D & L was extinguished by the settlement agreement, which was executed prior to D & L's assignment of the claim to Lageman. The trial court agreed that the timing of the settlement and assignment agreements barred Lageman's claim and granted the motion, citing Clement v. Prudential Property & Cas. Ins. Co., 790 F.2d 1545 (11th Cir.1986), which relied upon our supreme court's decision in Fidelity and Casualty Co. of N.Y. v. Cope, 462 So.2d 459 (Fla.1985).
In Clement, the Eleventh Circuit was presented with the question whether, under Florida law, an insured's claim against his insurer for bad faith failure to settle within the limits of his liability insurance policy survives an agreement which released the insured from any liability beyond the limits of his policy. In that case, which arose from an automobile accident, the injured party and the insured (Clement) agreed to a settlement amount of $75,000, with the understanding that Clement would not be liable for any amount in excess of the $10,000 policy limits to be paid by the insurer, in exchange for Clement's agreement to prosecute a bad faith claim against the insurer. No release and satisfaction was executed. However, the court held that the bad faith claim was not sustainable:
The Supreme Court of Florida clearly held in Cope ... that if an insured is no longer exposed to any loss in excess of the limits of his liability insurance policy, he no longer has any claim he might previously have had against his insurance company for bad faith failure to settle within policy limits. Thus, if an injured third party released the insured from liability, any bad faith claim then retained by the insured arising out of his liability to the injured third party ceases to exist, because the insured is no longer exposed to excess damages. In this case the settlement agreement assured appellant that he would not be held liable personally for the excess judgment to which he agreed. We find that arrangement substantively indistinguishable from the release and satisfaction that was at issue in Cope.

Appellant argues that Clement incorrectly applied the Florida Supreme Court's Cope decision and erroneously determined a covenant not to execute to be the functional equivalent of a release or satisfaction. Appellant urges this court to construe the Cope holding more narrowly and to foreclose an action against the insurer only in those situations where the injured party has actually released the tortfeasor from all liability or obtained a satisfaction of the underlying judgment. Here, she claims, there was no such satisfaction or release under the express terms of the settlement agreement. She contends that a covenant not to execute, unlike a release and satisfaction, does not discharge the entire obligation of the parties named in the release; that the obligation or liability continues, and that the insured has an unsatisfied judgment recorded against it until the entire judgment has been paid in full. Thus, she argues, there remains the element of harm  i.e., an exposure to a loss in excess of policy limits  necessary to sustain an action against the insurance agent.
We agree with Appellant that the Florida Supreme Court's holding in Fidelity and Cas. Co. of New York v. Cope requires the injured party to have completely released the tortfeasor from liability from the underlying judgment or obtained a satisfaction of judgment in order to preclude a subsequent action. Lageman executed no release or satisfaction and, as such, D & L still has an unsatisfied judgment recorded against it. See Florida Ins. Guar. Ass'n v. Giordano, 485 So.2d 453 (Fla. 3d DCA 1986).
Moreover, Clement and Cope are factually distinguishable from this case. Unlike the settlement agreement in the case at bar, the settlement agreement in Clement contained no assignment or agreement to assign the cause of action. Rather, the insured agreed to prosecute a bad faith claim against his insurance company and assigned any benefits he might derive therefrom to the plaintiff *984 to satisfy the judgment the plaintiff had obtained against him. Recognizing, though not deciding, that the assignment of the insured's claim may serve as consideration for the injured party's release of the insured from any further liability without at the same time extinguishing the bad faith claim, Clement considered the possibility that the parties therein may have decided against an assignment as a matter of trial strategy. The court stated:
In the real world of litigation, it is sometimes thought more desirable for one particular person or entity rather than another to prosecute or defend a claim. Some might consider a jury in a bad faith case more likely to sympathize with the wronged insured than an assignee of his claim. Perhaps the situation was so perceived in this case, for the agreement executed to release the insured from further exposure was carefully drafted so that the insured would appear as the plaintiff in the case against his insurance carrier. To that end, it was clearly provided that whatever claim the insured may have against the insurance company was not yet assigned, but remained then the property of the insured. (emphasis supplied). Clement at page 1548.
Thus, in Clement, an assignment of the bad faith action was clearly not within the contemplation of the parties. On the contrary, the agreement provided that the insured would retain his claim against the insurance company and prosecute the claim himself in court. Similarly, in scrutinizing the Cope agreement, the Clement court noted that:
Prior to filing suit.... Cope had executed a release and satisfaction of judgment in favor of the insured. The release was not preceded or accompanied by a assignment to the injured party of any bad faith claim then existing in favor of the insured. Clement, at page 1547.
Conversely, the settlement agreements between the parties in this case clearly demonstrate that it was their intent to assign the negligence claim prior to, or at least contemporaneously with, and as a condition of the settlement agreement and consent judgment. In pertinent part, the settlement agreement provided as follows:
2. That in exchange for this agreement, Defendant will sign and transfer all of its rights and causes of action it may have against Frank. H. Furman, Jr. and/or Frank H. Furman Realty, Inc. and/or Frank H. Furman Insurance Agency and/or State Farm Insurance Company for the alleged failure to procure adequate insurance coverage for the incident complained of in Case No. CL 89-8056 AC to the Plaintiff.
In the consent judgment, D & L assigned its rights against the insurer to Lageman before and as a condition of this settlement:
In consideration of the execution by Plaintiff, and Defendant, of the assignment attached hereto as Exhibit A and the Settlement Agreement attached hereto as Exhibit B and incorporated herein by reference as though more fully set forth herein, it is hereby ...
Clearly, the consent judgment incorporated the settlement and assignment and was conditioned upon both. Although it is undisputed that the consent judgment and settlement agreements were signed 19 days before the assignment, all documents were filed and recorded with the court on the same day, February 20, 1992. To rely merely upon the timing of the execution of these documents and disregard their plain language and intent and their contemporaneous filing and recording would amount to an elevation of form over substance and intent.
We believe that our decision in Shook v. Allstate Insurance Company, 498 So.2d 498 (Fla. 4th DCA 1986), rev. denied, 508 So.2d 13 (Fla.1987), is persuasive. In Shook, the injured plaintiff brought a bad faith action against the insurer upon claims assigned by the insured and pursuant to settlement of claims between the injured party and the insured. Allstate Insurance Company had issued an automobile insurance policy with bodily injury limits of $10,000 per person to the insured negligent driver. Plaintiff demanded the policy limits, but Allstate denied coverage, claiming the insured's policy had lapsed for nonpayment of premiums. Plaintiff *985 sued the insured, and thereafter, plaintiff and the insured entered into an agreement, whereby the insured acknowledged her liability to Plaintiff and agreed to $350,000 in damages As part of the settlement agreement, the plaintiff agreed:
To forego payment by defendant ... of the settlement sum of $350,000 and ... not to execute against defendant or otherwise attempt to obtain payment from defendant, personally, for the amount owing ...
In exchange for the plaintiff's promise not to execute against her, the insured assigned her right of action for breach of contract and bad faith against Allstate. The plaintiff sued Allstate for the $350,000 settlement amount, plaintiff's and the insured's attorney's fees and costs and the insured's collision loss. The trial court awarded attorneys fees and costs for both the plaintiff and the insured and the insured's collision claim. However, the court ruled, as a matter of law, that the plaintiff could not recover any portion of the $350,000 settlement agreement from Allstate because the release obtained by the insured from the plaintiff relieved Allstate of liability for the agreed amount of the settlement.
We reversed the trial court's denial of recovery to plaintiff of the $350,000 settlement amount, and in so doing, determined that it was the clear intent of the plaintiff not to release the insurance company. Upon closely examining the terms and surrounding circumstances of the settlement agreement, we stated:
Here the carrier refused to defend the insured, and appellant entered into settlement negotiations that resulted in an assignment of the insured's claims against its carrier to appellant. The circumstances surrounding the stipulation and agreement for settlement of the claim, and the language of the document demonstrate that it was not the intent of appellant or Stout to release any claims that they might have against appellee.
In accordance with Shook v. Allstate Insurance Company, we conclude that the circumstances surrounding the settlement agreement and the plain language of the documents in this case establish that none of the parties intended to release Furman. The timing of the execution of the documents is not controlling upon whether or not a viable claim exists against Furman, since the settlement agreement clearly provided that D & L, the insured, assigned specific claims against Furman in exchange for and as a condition of Lageman's covenant not to execute. The agreement not to execute and the assignment are dependent promises given contemporaneously. The covenant not to execute did not, therefore, extinguish the cause of action against Furman.
We, therefore, reverse the final summary judgment and remand this cause for further proceedings.
POLEN and PARIENTE, JJ., concur.