Hillsborough-southern judicial district
No. 2003-264

STATELINE STEEL ERECTORS, INC.

v.

WILLIAM SHIELDS & a.

Argued: November 5, 2003
Opinion Issued: December 9, 2003

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*James C. Wheat & a.* on the brief, and *Todd N. Hathaway* orally), for the plaintiff.

*Upton & Hatfield, LLP*, of Concord (*Russell F. Hilliard* and *David P. Slawsky* on the brief, and *Mr. Hilliard* orally), for the defendants.

BROCK, C.J. The plaintiff, Stateline Steel Erectors, Inc. (Stateline) appeals an order of the Superior Court (*Groff,* J.) granting summary judgment to the defendants, William Shields, and the insurance agency for which he worked, Shoff-Darby Insurance Agency, Inc., upon negligence and breach of contract claims brought on Stateline's behalf. We reverse and remand.

The relevant facts follow. This appeal concerns the defendants' provision of insurance services to Stateline in 1995. At that time, Stateline provided steel erection services to subcontractors. Stateline's contracts routinely required it to indemnify the subcontractors for claims arising out of its work. Stateline sought insurance coverage from the defendants, who obtained insurance for Stateline from Liberty Mutual Insurance Company. Unbeknownst to Stateline, the insurance policy excluded coverage for claims arising out of Stateline's contracts. In addition, it provided only $100,000 of relevant coverage.

In November 1995, one of Stateline's employees was severely injured while working on a Stateline project. The employee successfully sued the project's general contractor, the provider of the project's structural steel, and the project's steel erector (collectively, the contractors), for damages. This suit was settled. The contractors sought to be indemnified by Stateline for their costs in defending and settling the employee's lawsuit.

Stateline and Liberty Mutual entered into a settlement agreement with the contractors and their insurers. Pursuant to this agreement, Stateline stipulated that it was liable for a substantial judgment upon the contractors' indemnification claims. Stateline assigned to the contractors any claims it had for liability arising from the employee's accident, including any claims regarding the provision of insurance coverage to

Stateline. Stateline promised to cooperate in the prosecution of the assigned claims. Stateline further agreed to pay the contractors, through its insurer, the amount of the stipulated judgment that did not exceed its insurance coverage.

In exchange, the contractors agreed "not to attempt to satisfy the remainder of the stipulated judgment in any way against Stateline" or its insurer. They promised to satisfy the stipulated judgment only through the payment from Stateline's insurer and the prosecution of the assigned claims. The contractors further agreed not to "sue, continue with or bring further litigations against" Stateline arising out of the employee's accident or the contractors' indemnification claims.

Stateline signed a separate stipulation of judgment that provided, in pertinent part, that it agreed to a payment "by its insurance carrier in full satisfaction of the judgment." The stipulation further stated that the contractors would "not attempt to satisfy the remainder of the stipulated judgment in any action against [Stateline]."

The contractors subsequently filed negligence and breach of contract claims, in Stateline's name, against the defendants. The defendants moved for summary judgment. The trial court ruled in their favor, finding neither claim viable because Stateline suffered no loss due to the defendants' alleged failure to procure adequate insurance coverage. The court found that because the contractors agreed not to sue Stateline to recover the excess judgment, Stateline "was never liable for a judgment that exceeded its available insurance coverage." Thus, the court reasoned, Stateline was never damaged by the defendants' alleged negligence or breach of contract.

In reviewing the trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. *Sintros v. Hamon*, 148 N.H. 478, 480 (2002). If our review of that evidence discloses no genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm. *Id.* We review the trial court's application of the law to the facts *de novo. Id.*

As this case presents an issue of first impression, we look to other jurisdictions for guidance. *See id.* There is a split of authority as to whether an insured who has been released from the legal obligation to pay an excess judgment has any right against an allegedly negligent insurance agent, which could be assigned to others. The majority of jurisdictions have found such assignments valid. *See McLellan v. Atchison Ins. Agency Inc.*, 912 P.2d 559, 565 (Haw. Ct. App. 1996); *Lageman v. Frank H. Furman, Inc.*, 697 So. 2d 981 (Fla. Dist. Ct. App. 1997); *Campione v.*

*Wilson*, 661 N.E.2d 658, 659-63 (Mass. 1996); *Red Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995) (rejecting *Freeman v. Schmidt Real Estate & Ins.*, 755 F.2d 135, 136-30 (8th Cir. 1985), and holding that assignment together with covenant not to execute on excess judgment is valid); *Kobbeman v. Oleson*, 574 N.W.2d 633, 636 (S.D. 1998); *Tip's Package Store, Inc. v. Commer. Ins. Manag.*, 86 S.W.3d 543, 553-55 (Tenn. Ct. App. 2001); *Steinmetz v. Hall-Conway-Jackson, Inc.*, 741 P.2d 1054, 1056-57 (Wash. Ct. App. 1987); *see also* Note, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*, 47 DRAKE L. REV. 853, 856-60 (1999) (trend "seems to lean overwhelmingly toward the majority rule" that upholds assignment of insurance claim accompanied by covenant not to execute on judgment). *But see Oregon Mutual Ins. Co. v. Gibson*, 746 P.2d 245, 247 (Or. Ct. App. 1987).

Jurisdictions have used different approaches to find such assignments valid. Many jurisdictions distinguish between a release and a covenant not to execute on a judgment. In these jurisdictions, an assignment is valid if it is coupled with a covenant not to execute because the insured remains liable for the excess judgment; an assignment coupled with a release is void because the release extinguishes the insured's liability. *See, e.g., Kobbeman*, 574 N.W.2d at 637; *Lageman*, 697 So. 2d at 983; *Tip's Package Store*, 86 S.W.3d at 555. These jurisdictions deem a covenant not to execute merely a contract, not a release; if the assignee sought to collect the judgment from the insured, the insured could sue for breach of contract. *See Kobbeman*, 574 N.W.2d at 636.

In other jurisdictions, the legal basis for the insured's claim against its insurance agent still exists even though the insured is insulated from liability by either a release or a covenant not to execute. *See Campione*, 661 N.E.2d at 661-63.

A minority of jurisdictions have ruled that even a covenant not to execute extinguishes an insured's liability for an excess judgment. As the Oregon Court of Appeals has explained:

> Had [the] insurance agents procured the coverage alleged to be deficient, that coverage would not have become implicated, unless the insured became legally obligated to pay more than what was already paid on his behalf by his insurer. Under the covenant, however, he can never be required to pay any more than the coverage under the existing insurance.

*Oregon Mutual*, 746 P.2d at 247.

"For the most part, these conflicting decisions reflect a balancing of policy considerations." *Campione*, 661 N.E.2d at 662. Chief among these considerations is concern about the risk of collusion when an insured is protected from liability by a covenant not to execute or a release before entry of judgment. *See id.*

In our view, the benefits of such settlement agreements outweigh the risks. We believe it preferable to uphold assignments under these circumstances than to allow a negligent party to escape liability. *See McLellan*, 912 P.2d at 565. That Stateline never had to pay the stipulated judgment out of its own pocket is immaterial. But for the defendants' alleged negligence, Stateline would not have had to enter into the settlement agreement. *See Steinmetz*, 741 P.2d at 1056.

Like other courts, we believe that the risk of collusion can be diminished by requiring the contractors to bear the burden of proof on the assigned claims and by recognizing that the defendants, who were not parties to the settlement agreement, cannot be bound by its terms. *See Campione*, 661 N.E.2d at 663. The defendants remain free to raise collusion or fraud as a defense. *See id.*; *Kobbeman*, 574 N.W.2d at 636.

To recover against the defendants, the contractors must prove the essential elements of their negligence and breach of contract claims and will have to establish that Stateline's damages exceeded its insurance coverage. Neither the settlement agreement between the contractors and the employee nor that between the contractors and Stateline is conclusive on this point, however. *See Campione*, 661 N.E.2d at 663; *cf. Red Giant Oil*, 528 N.W.2d at 534 (holding that judgment not adjudicated on merits is not binding on insurer in claim against insurer for failure to defend).

We note that the risk of collusion in this case is particularly low. In the typical case, the settlement agreement is between the insured, who is the tortfeasor, and the injured party. *See Campione*, 661 N.E.2d at 662. In that case, there is a real risk of collusion between the tortfeasor and the injured party when they enter into a prejudgment release and a covenant not to execute in favor of the tortfeasor. *See id.* at 663. The amount of the judgment is determined solely by agreement of the parties. *See id.*

By contrast, in this case, the injured party, the employee, is not a party to the agreement at issue. The agreement is between the insured, Stateline, and the parties Stateline is contractually obligated to indemnify, the contractors. Presumably, the stipulated judgment in this case represents the amount the contractors *actually* spent to defend against and settle the employee's lawsuit.

Today's decision is consistent with New Hampshire law governing assignments generally. In New Hampshire, "an assignee obtains the rights

of the assignor at the time of the assignment." *YYY Corp. v. Gazda*, 145 N.H. 53, 61 (2000). The assignee's rights are the same as those of the assignor at the time of the assignment. *See id.; accord Steinmetz*, 741 P.2d at 1056.

██ When Stateline entered into the settlement agreement, it had claims against the defendants for damages owed to the contractors because of the defendants' alleged failure to procure adequate insurance. When Stateline assigned these claims to the contractors, the contractors obtained the right to pursue them. *See Steinmetz*, 741 P.2d at 1056. "We fail to see why legally it should make any difference who sues the [insurance agent]—the insured or the insured's assignee." *Kobbeman*, 547 N.W.2d at 636 (quotation omitted).

Our decision today is also consistent with our other decisions regarding the assignment of insurance claims—*Dumas v. State Mutual Auto Insurance Co.*, 111 N.H. 43 (1971), and *Allstate Insurance Co. v. Reserve Insurance Co.*, 116 N.H. 806 (1976). The issue in *Dumas*, 111 N.H. at 44-45, was whether an insured could validly assign to the injured party his right to recover an excess judgment against his insurer even though the insured had not paid and was unable to pay the excess judgment. We rejected the rule we had adopted in 1942 that an outstanding judgment, which may never be paid, is not a legal injury. *Id.* at 45-46. We reasoned that our old rule requiring pecuniary loss was "based upon the fallacy that damaged credit and financial ruin are not injuries." *Id.* at 45. We held that "a plaintiff may maintain an action against an insurer for negligent failure to settle a case without prior payment of or proof of ability to pay the excess judgment." *Id.* at 46.

In *Allstate*, 116 N.H. at 807, we considered whether an insurance company providing excess coverage to its insured had a cause of action against the primary carrier for its negligent failure to settle. We held that the insured had assigned its right to proceed against the primary carrier to the excess insurer. *Id.* at 808. We rejected the primary carrier's argument that the assignment was ineffective because the insured suffered no financial loss. *Id.* Reaffirming *Dumas*, we upheld the assignment. *Id.*

In this case, as in *Dumas* and *Allstate*, the insured has been damaged, even if, because of the settlement agreement, the stipulated judgment was never levied against it. Stateline must still endure the adversity of litigation and might suffer diminishment of its credit rating, among other intangible harms. *See Kobbeman*, 574 N.W.2d at 636.

The defendants argue that *Dumas* and *Allstate* are not controlling, in part, because the excess judgment was not entered after complete litigation of the contractors' claims. Although we are mindful of the risk of collusion when an insured agrees both to a judgment in excess of its policy and to be protected from liability for that judgment, "we are reluctant to foreclose the possibility of settlement" like that entered into by Stateline and the contractors. *Campione*, 661 N.E.2d at 662. The settlement benefits Stateline by freeing it from liability for amounts beyond its insurance limits. It benefits the contractors because it requires Stateline to cooperate in litigation against the defendants. We believe that requiring the contractors, the assignees, to prove their assigned claims "in full reduces the risk of collusion, and justifies giving effect to the assignment." *Id.* at 663.

The defendants argue that Stateline was protected by a full release, not merely a covenant not to execute. Thus, they assert, even under the majority rule, Stateline had no viable cause of action to assign to the contractors. We disagree.

Contrary to the defendants' assertions, the agreement did not include a full release. Although the trial court did not reach this issue, the proper interpretation of a contract is a question of law for this court to decide. *Lawyers Title Ins. Corp. v. Groff*, 148 N.H. 333, 336 (2002). To interpret the agreement, we give the language the parties used its reasonable meaning, considering the circumstances and context in which it was negotiated, and reading the agreement as a whole. *Id.* at 336-37. Absent ambiguity, we interpret the parties' intent from the plain meaning of the agreement's language. *Id.* at 337.

A covenant not to sue or a covenant not to execute is distinguishable from a release. 9 R. MCNAMARA, NEW HAMPSHIRE PRACTICE, PERSONAL INJURY, TORT AND INSURANCE PRACTICE § 23.03, at 23-3 (3d ed. 2003). "Unlike a release, a covenant not to sue does not relinquish a right or claim, or extinguish a cause of action." *Id.* "A covenant not to sue recognizes the continuation of the obligation or liability; the party making the covenant not to sue agrees only not to assert any right or claim based upon the obligation." *Id.*

The agreement does not state that the contractors "release" Stateline from liability. To the contrary, the contractors merely agreed "not to attempt to satisfy the remainder of the stipulated judgment in any way against Stateline" and not to "sue, continue with, or bring further litigations" against Stateline arising out of the employee's accident or the contractors' indemnification claims. The contractors promised to seek

satisfaction of the judgment solely through the payment they received from Stateline's insurer and from pursuing Stateline's claims against the defendants.

According to the plain meaning of its terms, the agreement was a covenant not to sue or execute the judgment against Stateline, not a release. *See Tip's Package Store*, 86 S.W.3d at 548, 555.

*Reversed and remanded.*

BRODERICK, NADEAU, DALIANIS and DUGGAN, JJ., concurred.