NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by email at the following address: reporter@courts.state.nh.us.  Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

8th Circuit Court-Keene District Division
No. 2021-0156


KEENE AUTO BODY, INC.

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

Argued: October 14, 2021
Opinion Issued: November 15, 2022


Steve Piispanen, non-lawyer representative appearing by approval of the Supreme Court under Rule 33(2), on the brief and orally, for the plaintiff.

Primmer Piper Eggleston & Cramer PC, of Manchester (Brendan D. O'Brien on the brief and orally), for the defendant.

Bernstein, Shur, Sawyer & Nelson, P.A., of Manchester (Edward J. Sackman and Hilary H. Rheaume on the brief, and Edward J. Sackman orally), for the New Hampshire Automobile Dealers Association, as amicus curiae.


BASSETT, J.  The plaintiff, Keene Auto Body, Inc., appeals an order of the Circuit Court (Gleason, J.) granting a motion to dismiss filed by the defendant, State Farm Mutual Automobile Insurance Company.  Keene Auto

Body — acting as an assignee of Caleb Meagher, who insured his vehicle through State Farm — sued State Farm for breach of contract for failing to cover the full cost of repairs to the insured's vehicle. State Farm moved to dismiss the suit on the grounds that, because of an anti-assignment clause in the insured's policy, the insured's assignment of his breach of contract claim to Keene Auto Body was not valid, and that, even if it was, Keene Auto Body did not sufficiently state a claim for breach of contract. The trial court granted the motion. We reverse and remand.

The relevant facts follow. The insured owns a vehicle that is insured by State Farm. His vehicle sustained covered damage, and he brought it to Keene Auto Body for repairs. State Farm and Keene Auto Body each provided the insured with an estimate of repair costs; Keene Auto Body's estimate was higher, and included costs for some repairs that State Farm did not include. Keene Auto Body and State Farm did not reach an agreement about the repair costs. Without obtaining approval from State Farm, the insured instructed Keene Auto Body to repair his vehicle in accordance with its estimate, and Keene Auto Body did so. State Farm refused to pay any costs in excess of its estimate. Without seeking State Farm's approval, the insured then assigned to Keene Auto Body his right to sue State Farm for the difference. Keene Auto Body filed a small claims complaint against State Farm alleging that State Farm was obligated under the insurance policy to pay an additional $1,093.37 for covered repair costs.

State Farm filed a motion to dismiss. It argued that, because the insured's policy contained an anti-assignment clause, the insured's assignment of his claim to Keene Auto Body was invalid. State Farm also argued that, even if the assignment was valid, Keene Auto Body did not state a viable claim because State Farm was obligated to cover only the costs reflected in its own estimate. Keene Auto Body objected. The court entered a margin order granting the motion to dismiss without identifying which of State Farm's arguments it found persuasive. This appeal followed.

On appeal, Keene Auto Body argues that the trial court erred. It asserts that the assignment of the insured's claim to Keene Auto Body was valid. It also argues that its complaint alleged sufficient facts to support its breach of contract claim. State Farm counters that the assignment was prohibited by an anti-assignment clause and that, even if the assignment was valid, the factual allegations in Keene Auto Body's breach of contract complaint are insufficient to survive a motion to dismiss.

Keene Auto Body appeals the trial court's ruling on a motion to dismiss. State Farm first argues that the insured's assignment of his claim was barred by the language of the insurance policy. Resolving this issue requires that we interpret the language of the insurance policy, which is ultimately a question of

2

law for this court to decide.  See Birch Broad. v. Capitol Broad. Corp., 161 N.H. 192, 196 (2010).  Accordingly, we review a trial court's interpretation of policy language de novo.  See id.  In assessing State Farm's argument that the factual allegations in Keene Auto Body's breach of contract claim are insufficient to survive a motion to dismiss, we assume the facts alleged in Keene Auto Body's pleadings are true, construe all reasonable inferences in the light most favorable to the plaintiff, and assess whether the allegations contained in the complaint constitute a basis for legal relief.  Teatotaller, LLC v. Facebook, Inc., 173 N.H. 442, 446 (2020).

We first address Keene Auto Body's argument that the anti-assignment clause in the insured's policy did not preclude the insured's assignment of his breach of contract claim.  "The fundamental goal of interpreting an insurance policy, as in all contracts, is to carry out the intent of the contracting parties."  Bartlett v. Commerce Ins. Co., 167 N.H. 521, 530 (2015) (quotation omitted).  To discern the parties' intent, we first examine the language of the policy itself and look to the plain and ordinary meaning of the policy's words in context.  Id.  We construe the terms of the policy as would a reasonable person in the position of the insured based upon more than a casual reading of the policy as a whole.  Id. at 530-31.  Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning.  Id. at 531.  We need not examine the parties' reasonable expectations of coverage when a policy is clear and unambiguous; absent ambiguity, our search for the parties' intent is limited to the words of the policy.  Id.  The fact that parties may disagree on the interpretation of policy language does not necessarily create an ambiguity.  Id.  For an ambiguity to exist, the disagreement must be reasonable.  Id.

In determining whether an ambiguity exists, we consider the term at issue in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions.  Id.  If one of the reasonable meanings of the language favors the policyholder, the ambiguity will be construed against the insurer in order to honor the insured's reasonable expectations.  Id.  However, when "the policy language is clear, this court will not perform amazing feats of linguistic gymnastics to find a purported ambiguity simply to construe the policy against the insurer and create coverage where it is clear that none was intended."  Id. (quotation omitted).

The policy language at issue reads as follows:

No assignment of benefits or other transfer of rights is binding upon us unless approved by us.

(Emphases in original.)  State Farm argues that the plain language of this provision prohibits the transfer of legal claims against the insurer that have

accrued because an insured loss has already occurred, as well as the pre-loss transfer of policy benefits and rights. Keene Auto Body counters that the clause should not be read as prohibiting assignment of post-loss claims.

State Farm focuses its argument on the term "benefits," arguing that we have "recognized that recovering pursuant to an automobile insurance policy is a benefit." However, the cases cited by State Farm stand for the simple proposition that proceeds owed by an insurance company to an insured for covered damage are "benefits." See Langevin v. Travco Ins. Co., 170 N.H. 660, 666 (2018). State Farm does not cite, nor have we found, authority for the proposition that an accrued legal claim for collection of an amount payable under the policy is, itself, a benefit. We have, however, previously referred to an insured's ability to sue his or her insurer for breach of contract as a "right," see Stateline Steel Erectors v. Shields, 150 N.H. 332, 336-37 (2003), often referred to as a "chose in action." Pratte v. Balatsos, 102 N.H. 147, 148 (1959); see also In re Ambassador Ins. Co., Inc., 965 A.2d 486, 490-91 (Vt. 2008). As State Farm notes, the policy's broad prohibition on "transfer of rights" does not include any qualifying language. We are therefore satisfied that State Farm's broad reading of the anti-assignment clause is reasonable.

Keene Auto Body's narrower reading of the anti-assignment clause requires more extensive analysis to determine whether it is also reasonable. To decide whether the prohibition on transfer of benefits and rights may be reasonably read as not applying to assignment of post-loss claims, we must consider the policy language at issue in context, giving consideration to its purpose. Exeter Hosp. v. Steadfast Ins. Co., 170 N.H. 170, 179 (2017) (concluding that the insured's interpretation of umbrella coverage was reasonable in light of the purpose of an umbrella policy); Russell v. NGM Ins. Co., 170 N.H. 424, 435 (2017) (construing an ensuing loss provision so as to effectuate its purpose to preserve coverage for insured losses that are caused by an excluded loss). When the context could cause a reasonable insured to expect narrow application of a policy provision, we will honor that reasonable expectation in the absence of specific language to the contrary. See Orleans v. Commercial Union Ins. Co., 133 N.H. 493, 497 (1990).

The purpose of anti-assignment clauses like State Farm's "is to protect the insurer from increased liability." Ambassador Ins. Co., 965 A.2d at 491 (quotation omitted); cf. Margolis v. Insurance Company, 100 N.H. 303, 305 (1956) (noting that prior version of statute regulating assignment of insurance, which had been incorporated into an insurance policy, was "based upon the idea that the risk and hazard of loss may be increased by a change of ownership"). A reasonable insured would understand why, in furtherance of this purpose, an insurer would prohibit assignment of policy benefits and rights pre-loss, because "some improvident or undesirable assignee" may pose a greater risk to the insurer by, for example, failing to pay premiums or

4

engaging in behavior more likely to result in loss. National Memorial Serv. v. Metropolitan Life Ins. Co., 49 A.2d 382, 382 (Pa. 1946); see also Ambassador Ins. Co., 965 A.2d at 491 ("[T]he identity of the insured determines the risk to the insurer.").

By contrast, a reasonable insured would not understand why the anti-assignment clause should restrict assignment of post-loss claims, because such a construction would not further the clause's risk-moderating purpose. "[O]nce an event occurs that triggers an insurer's liability, the insurer's risk cannot be increased by a change in the insured's identity." Ambassador Ins. Co., 965 A.2d at 491 (quotation omitted). As the Supreme Court of Iowa explained:

> [T]he need to protect the insurer no longer exists after the insured sustains the loss because the liability of the insurer is essentially fixed . . . . [O]nce the loss has triggered the liability provisions of the insurance policy, an assignment is no longer regarded as a transfer of the actual policy. Instead, it is a transfer of a chose in action under the policy. At this point, the insurer-insured relationship is more analogous to that of a debtor and creditor, with the policy serving as evidence of the amount of debt owed.

Conrad Brothers v. John Deere Ins. Co., 640 N.W.2d 231, 237-38 (Iowa 2001) (citations omitted). In other words, because assignment of post-loss claims does not impact the insurer's risk, "[w]e fail to see why legally it should make any difference who sues the [insurer] — the insured or the insured's assignee." Stateline Steel, 150 N.H. at 337 (quotation omitted).

State Farm counters that assignment of choses in action does impact its risk, because such assignment "increases the likelihood that insurers will face litigation" and assignees' litigation incentives and abilities may differ from insureds'. We disagree. No matter the incentive of the litigant, the claims are "worth what they are worth," and the plaintiff "must still prove the extent of loss and the validity of the claims." Ambassador Ins. Co., 965 A.2d at 492. Although assignees may be more sophisticated or more well-funded than insureds, we do not consider the greater possibility that an insurer will have to pay funds that it is already contractually obligated to pay as an increase in risk; otherwise, we would "reward the insurer which refuses to honor its contractual obligations." St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co., 543 P.2d 147, 149 (Ariz. Ct. App. 1975); Conrad Brothers, 640 N.W.2d at 238 ("[I]f we permitted an insurer to avoid its contractual obligations by prohibiting all post-loss assignments, we could be granting the insurer a windfall.").

State Farm relies on Margolis v. Insurance Company, 100 N.H. 303 (1956), to support its argument. That reliance is misplaced. In Margolis, the

5

named insured declared bankruptcy and assigned all of its assets, including commercial fire insurance policies, to an assignee for the benefit of creditors. Margolis, 100 N.H. at 304 (preface to opinion). The insurers never consented to the assignment. Id. at 306. The policies were then purchased by a new entity, id., which suffered a loss caused by fire and made a claim on the policies, id. at 309. The insurers refused to pay the claim, as the insurance policies contained an anti-assignment clause that rendered the policies void upon assignment absent the insurers' consent. Id. at 305, 309. In holding that the insurers were not required to pay the claim, we stated the insurers were "not required" to demonstrate that assignment "actually increased the risk materially." Id. at 305. State Farm now relies on Margolis to argue that its ability to prohibit assignment of choses in action cannot be contingent on it demonstrating that such assignments increase its risk. However, Margolis is inapposite, as it concerned assignment of insurance benefits prior to the occurrence of an insured loss, and therefore has no bearing on the issue of post-loss claim assignment. Accordingly, we are satisfied that Keene Auto Body's reading of the anti-assignment clause is reasonable.

Further support for this conclusion can be found in case law from other states. The "overwhelming majority" of courts that have addressed this issue have held that anti-assignment clauses do not prevent assignment of post-loss claims. Givaudan Fragrances v. Aetna, 151 A.3d 576, 584-90 (N.J. 2017) (summarizing the "substantial case law around the country"); see Conrad Brothers, 640 N.W.2d at 237 (collecting cases). But see, e.g., In re Katrina Canal Breaches Litigation, 63 So. 3d 955, 960-63 (La. 2011) (adopting minority approach). Several of the courts adopting the majority position have construed the same anti-assignment clause that is at issue in this case. See Jawad A. Shah, M.D. v. State Farm Mut., 920 N.W.2d 148, 158-59 (Mich. App. 2018) (adopting the majority approach on public policy grounds); M.V.B. Collision Inc. v. State Farm Ins. Co., 72 N.Y.S.3d 407, 409, 412-13 (N.Y. Dist. Ct. 2018) (same).

This body of authority has "put[] the insurance industry on notice that an insured could reasonably expect" that assignment of choses in action would be permissible "unless informed by fairly specific policy language" to the contrary. See Orleans, 133 N.H. at 496-97; see also Smith v. Liberty Mut. Ins. Co., 130 N.H. 117, 122 (1987) (noting that insurers are "in a position" to "assess the probability of reasonable disagreement in applying any given policy language . . ., and if the insurer foresees such disagreement it may either change the language, or otherwise clarify the intent of the contracting parties, or take its chances"). "If [State Farm] had intended to . . . restrict assignments, the language is not as clear and unambiguous as it should be." National Memorial Serv., 49 A.2d at 383.

The foregoing discussion demonstrates a "reasonable disagreement between the contracting parties leading to at least two interpretations of the

6

policy's language." Exeter Hosp., 170 N.H. at 179 (quotation and brackets omitted); see also M. Mooney Corp. v. U.S. Fidelity & Guaranty Co., 136 N.H. 463, 472 (1992) (finding an insurance policy provision ambiguous "[i]n light of the parties' reasonable and contradictory interpretations"). The dissent suggests that it is unprecedented and inappropriate for our court to find an insurance policy provision ambiguous absent an argument by the insured that an ambiguity exists. That is not the case. It is not uncommon for parties to offer competing and irreconcilable interpretations of a contract term — and not to argue in the alternative that the policy language is ambiguous. In fact, our case law establishes that it is our responsibility to determine, as a threshold matter, whether the competing interpretations are reasonable. If both proferred interpretations are reasonable, then an ambiguity exists — regardless of whether either party has argued ambiguity. See, e.g., Exeter Hosp., 170 N.H. at 179; Weaver v. Royal Ins. Co. of America, 140 N.H. 780, 782-83 (1996).

Because we conclude that the anti-assignment clause is ambiguous, we must construe it against the insurer. Trombly v. Blue Cross/Blue Shield, 120 N.H. 764, 771-72 (1980). We therefore hold that the anti-assignment clause did not prohibit the insured from assigning his post-loss claim to Keene Auto Body. We express no opinion as to whether an unambiguous clause prohibiting assignment of post-loss claims would be enforceable.

Given this holding, and the trial court's margin order, which lacked explication, we must decide whether the factual allegations in Keene Auto Body's breach of contract claim are sufficient to survive State Farm's motion to dismiss. They are.

The pleading requirements in small claim actions are minimal. Teatotaller, 173 N.H. at 446. A small claim complaint must include "[t]he business or other relationship between the plaintiff and defendant," "a description setting forth with specificity the reason(s) the plaintiff believes that the defendant owes money to the plaintiff," and "[t]he amount that the plaintiff claims that the defendant owes." Dist. Div. R. 4.1(a)(4)(A)-(B). In ruling on a motion to dismiss filed in a small claim proceeding, a trial court may consider factual allegations made by the plaintiff in a motion or objection, in addition to those made in the complaint. Teatotaller, 173 N.H. at 446. We assume the facts alleged in the plaintiff's pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff. Id.

"Under New Hampshire law, a breach of contract occurs when there is a failure without legal excuse to perform any promise which forms the whole or part of a contract." Id. at 447 (quotation omitted). Keene Auto Body alleged that State Farm refused to pay for $1,093.37 of repair costs, which were covered by the insured's policy with State Farm. It further alleged that the insured assigned his right to these insurance proceeds to Keene Auto Body.

7

State Farm argues that these allegations are insufficient to constitute a breach of contract claim because it has already paid a sum that satisfied the requirements set forth in RSA 417:4, XX(c) (2015), which provides that insurers "may limit payment for [repairs] based on the fair and reasonable price in the area by repair shops or facilities providing similar services." Additionally, State Farm argues that Keene Auto Body's claim is precluded because it "perform[ed] repairs without an agreement, then demand[ed] its unilaterally-imposed price" from State Farm, contrary to the procedures required by New Hampshire Administrative Rule, Ins 1002.17(g). That regulation provides that if the repair shop and insurer are unable to agree on a price, then the price shall be that of "any other recognized, competent, and conveniently located" repair shop willing and able to repair the vehicle in a reasonable time.

In its pleadings, Keene Auto Body alleged facts to show that its repair costs were "fair and reasonable," and that the sum State Farm actually paid was neither reasonable nor calculated in compliance with New Hampshire Administrative Rule, Ins 1002.17(g). We must, at this stage of the litigation, assume that the facts alleged by Keene Auto Body are true and construe all inferences in the light most favorable to Keene Auto Body. Teatotaller, 173 N.H. at 446. Therefore, there is a factual dispute that must be resolved before the merits of State Farm's legal arguments can be addressed. We therefore conclude that the factual allegations in Keene Auto Body's breach of contract complaint are sufficient to survive State Farm's motion to dismiss.

Finally, the dissent protests that our opinion is "contrary to New Hampshire law" and will "fundamentally alter" the relationship between policyholders and insurers, as regulated by RSA 417:4, XX(c) and New Hampshire Administrative Rule, Ins 1002.17. Our holding today does nothing of the sort: it has absolutely no bearing on the operation of the regulatory and statutory provisions cited by the dissent, which establish a framework for resolving disagreements regarding the fair and reasonable cost of vehicle repairs. We simply explain that, given the language of the anti-assignment clause, nothing in the policy prevents the insured from assigning his right — arising post-loss — to a resolution of the dispute with State Farm as to a fair and reasonable price.[1] Any defense available to State Farm in an action filed by the insured — for example, that the claim cannot be maintained because of New Hampshire Administrative Rule, Ins 1002.17 — would be available to State Farm in an action filed by Keene Auto Body.

---

[1] The dissent speculates as to the impact of the court's opinion on insurance premiums. It raises the specter that premiums will rise as a consequence of our opinion — although there is no evidence in the record to support that hypothesis — and suggests that the mere possibility that premiums could be affected should somehow skew the legal analysis. We disagree. Premium levels are irrelevant to our analysis.

We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

HICKS and DONOVAN, JJ., concurred; MACDONALD, C.J., and HANTZ MARCONI, J., dissented.


MACDONALD, C.J., and HANTZ MARCONI, J., dissenting. The most fundamental principle of contract interpretation is to give effect to the unambiguous meaning of the words to which the parties agreed. The unambiguous language at issue requires State Farm to consent to any assignment. It did not do so. That should end the matter.

The majority takes a different course. Absent any prompting — much less, developed legal arguments — from Keene Auto Body, the majority employs novel interpretive principles to discern an ambiguity in the consent-to-assignment clause. They then construe the ambiguity in favor of Keene Auto Body. As a result, the judiciary effectively finds itself in a field previously reserved for legislators and industry regulators. The judiciary does not belong here, especially because, as State Farm points out, today's decision may well result in an increase in risk to insurers, and, thus, premiums paid by New Hampshire policyholders. Therefore, and for the reasons discussed below, we respectfully dissent.

I

This is an appeal from a motion to dismiss a small claim complaint. As we set forth in Teatotaller, LLC v. Facebook, Inc., 173 N.H. 442, 446 (2020), the standard of review is particularly deferential to a plaintiff's allegations. In reviewing a trial court's decision to grant a motion to dismiss, we examine whether the allegations in the plaintiff's pleadings are reasonably susceptible to a construction that would permit recovery. Id. We do not, however, assume the truth of statements in the plaintiff's pleadings that are merely conclusions of law. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law, and if the allegations constitute a basis for legal relief, we must hold that it was improper to grant the motion to dismiss. Id.

In the context of a small claims proceeding, we have modified the foregoing in two respects. First, we apply this standard "liberally" because of

9

the summary nature of a small claim complaint.  Id.  Second, a "trial court may consider factual allegations made by the plaintiff in a motion or objection, in addition to those in the small claim complaint."  Id.

Keene Auto Body's small claim form complaint sought recovery of $1,093.37.  The plaintiff checked a box indicating that "this is a debt that was purchased from or assigned by a third party," and identified Caleb Meagher as the third party.  An attachment to the form stated as follows:

> Caleb assigned the insurance proceeds that are owed to him by State Farm.  State Farm failed to indemnify Caleb.  [State Farm] owes Caleb for numerous necessary repair costs to properly repair his vehicle.  Caleb & [State Farm] must agree upon the actual cash value of the loss.  There was a disagreement between [State Farm] and the insured, [State Farm] should have resolved this disagreement by appraisal, instead of breaching the contract.  A few examples of costs that [State Farm] denied coverages for were price increases, one time non reusable parts, safety related repairs, replacement of damaged parts, Aim radar, Covid precautions.

State Farm moved to dismiss the complaint.  Its motion raised two arguments: first, that the contractual provision prohibiting assignment without State Farm's approval applies and State Farm did not approve the assignment; and second, even if the assignment were valid, Keene Auto Body could not succeed on its claim.  Keene Auto Body objected.  State Farm filed a reply, and Keene Auto Body filed a sur-reply.  In its objection, Keene Auto Body stated that "State Farm took the payment of loss option to pay Caleb the actual cash value amount of the covered vehicle," and that "Keene Auto Body took the contract of assignment of proceeds to collect the remaining actual cash value balance owed to Caleb from State Farm for indemnification."  To be clear, State Farm paid on Meagher's claim.  Keene Auto Body contended that State Farm's repair estimate did not comply with repair procedures required by the original manufacturer to return the vehicle to its pre-loss condition.  Those omissions from the manufacturer's requirements included, for example, technology and software scans.

In a margin order, the trial court granted the motion.

II

We disagree with the majority that Keene Auto Body offered any argument that the consent-to-assignment clause's language is ambiguous.  We also disagree with the majority that Keene Auto Body presented sufficiently developed legal arguments that the clause's plain language does not apply to "post-loss" assignments.  Rather, on the subject of the clause's applicability,

10

Keene Auto Body's brief simply argues, "Meagher, as the beneficiary of these proceeds, did not need State Farm's authority to enter the assignment of proceeds contract, as State Farm has alleged, as the contract was between Meagher and Keene Auto Body."  It then notes that in New Hampshire, "'an assignee obtains the rights of the assignor at the time of the assignment.  The assignee's rights are the same as those of the assignor at the time of the assignment.'" (Quoting <u>Stateline Steel Erectors, Inc. v. Shields</u>, 150 N.H. 332, 336-37 (2003).)  Further, Keene Auto Body argues, because "it is clear that New Hampshire laws override the State Farm policy allowing the beneficiary to assign these insurance proceeds . . . State Farm's anti-assignment clause in the policy [is] invalid."

Although the majority accurately recites interpretive principles governing contracts, they then misapply them.  Our threshold inquiry focuses on the language of the policy itself.  The plain language of the consent-to-assignment clause could hardly be more straightforward: "No assignment of benefits or other transfer of rights is binding upon <u>us</u> unless approved by <u>us</u>." (Emphases in original.)  And, under our cases, that should end the matter: "Policy terms are construed objectively, and where the terms of a policy are clear and unambiguous, we accord the language its natural and ordinary meaning . . . . [A]bsent ambiguity, our search for the parties' intent is limited to the words of the policy."  <u>Bates v. Phenix Mut. Fire Ins. Co.</u>, 156 N.H. 719, 722 (2008) (quotation omitted).

The plain and ordinary meaning of the clause's language is clear and, in the usual course, it is our duty to enforce it.  Because State Farm did not consent to the assignment, that concludes our analysis.  Today, however, the majority goes further.

Although we have previously stated that "we will not enforce a contract or contract term that contravenes public policy," we did so with the caveat that "[d]eclaration of public policy with reference to a given subject is regarded as a matter primarily for legislative action."  <u>Rizzo v. Allstate Ins. Co.</u>, 170 N.H. 708, 713 (2018).  It is true, as the majority parenthetically observes, that courts in other jurisdictions have concluded that a policy's prohibition on post-loss assignments violates public policy.  <u>See, e.g.</u>, <u>Jawad A. Shah, M.D. v. State Farm Mut.</u>, 920 N.W.3d 148, 158-59 (Mich. App. 2018); <u>M.V.B. Collision Inc. v. State Farm Ins. Co.</u>, 72 N.Y.S.3d 407, 409 (N.Y. Dist. Ct. 2018).  In <u>Shah</u>, the Michigan Court of Appeals considered an attempt to assign a State Farm policy and the court interpreted the exact language at issue in this case.  Notably, the court observed that the policy language was "<u>perfectly clear</u>" and "<u>unambiguous</u>," but, nevertheless, could not be enforced because it violated Michigan public policy securing the right to transfer "an accrued cause of action."  <u>Shah</u>, 920 N.W.3d at 158-59 (emphases added).  There may be merit to such public policy concerns.  However, as noted, that is "a matter primarily for legislative action."

11

Notwithstanding, the majority reaches the same result by following a problematic course. Absent <u>any</u> argument by Keene Auto Body that the policy language is ambiguous or any developed legal argument as to why such clauses should be read as prohibiting assignment of post-loss claims, the majority nonetheless constructs such arguments. They start by citing <u>Exeter Hospital v. Steadfast Insurance Co.</u>, 170 N.H. 170, 179 (2017), for the proposition that "we must consider the policy language at issue in context, giving consideration to its purpose." At most, <u>Exeter Hospital</u> may be read as endorsing the proposition that a policy's purpose may be considered as supporting a party's reasonable interpretation of the language at issue. <u>Exeter Hosp.</u>, 170 N.H. at 179. However, it is a novel proposition to use a contract's purpose to create an ambiguity in the face of "perfectly clear" and "unambiguous" language.

We disagree that a "reasonable insured" would not understand the plain language of this automobile policy, but rather would seek the "risk-moderating purpose" of the clause in a Vermont Supreme Court decision interpreting an entirely different policy in the context of a coverage dispute over hundreds of millions of dollars of asbestos-related liability. <u>In re Ambassador Ins. Co., Inc.</u>, 965 A.2d 486, 490-91 (Vt. 2008). Or, that a "reasonable insured" in New Hampshire would appreciate that the Iowa Supreme Court has concluded that the "need to protect the insurer no longer exists after the insured sustains the loss because the liability of the insurer is essentially fixed." <u>Conrad Bros. v. John Deere Ins. Co.</u>, 640 N.W.2d 231, 237 (Iowa 2001).

On this point, the majority strays into territory requiring an informed knowledge of both the insurance industry and the economics of automobile insurance. We refrain from dabbling in either, especially on this record. Without any record support, the majority summarily rejects State Farm's argument that an assignment such as the one to Keene Auto Body will increase "'the likelihood that insurers will face litigation' and that assignees' incentives and abilities may differ from insureds'." The majority essentially concludes that the risk is the risk, and the insurers are on the hook for whatever the loss is after the loss occurs without paying any attention to the contracting parties' agreement to limit that risk.

Yet, that is contrary to New Hampshire law. RSA 417:4, XX(c) provides that, in the context of automobile insurance, an "insurer may limit payment for such work based on the fair and reasonable price in the area by repair shops or facilities providing similar services." New Hampshire Insurance Department Rule 1002.17 provides that if a repair shop and the insurer cannot agree on a price, then the "price shall be the price available from any other recognized, competent, and conveniently located independent repair shop or facility that is willing and able to repair the damaged motor vehicle within a reasonable time." <u>N.H. Admin. R.</u>, Ins 1002.17.

12

The majority would fundamentally alter this arrangement. As one commentator has noted, an assignment such as the one in this case permits the repair shop "to both write the bill <u>and</u> collect the check." Timothy P. Ososkie, <u>If You Give a Shop a Claim: The Unsustainable Inequity of Pennsylvania's Unbridled Post-Loss Assignments</u>, 125 Penn. St. L. Rev. 935, 937 (2021). In an unpublished opinion, the Ohio Court of Appeals concluded that a similar assignment "would have materially changed [the insurer's] duty and materially increased its burden or risk under the contract. . . . [T]he right to negotiate is markedly different than a third party's demand for payment in full." <u>Mercedes-Benz of West Chester v. American Family Ins.</u>, 2010 WL 2029048, at *4 (Ohio Ct. App. May 24, 2010). The potential result is "burdensome litigation for insurers and . . . consequently rising premiums for policyholders." Ososkie, <u>supra</u> at 938.

The majority also points to case law from other states that have concluded that consent-to-assignment clauses do not prevent assignment of post-loss claims. We do not dispute other courts have so held, perhaps even the "overwhelming majority" of them. But, we are unaware of any principle of contract interpretation adopted by this court supporting the proposition that cases interpreting other policies between other parties in other states creates an ambiguity in the policy at issue here. As noted above, <u>Shah</u>, relied upon by the majority, finds the exact State Farm policy language at issue here to be "perfectly clear" and "unambiguous." <u>Shah</u>, 920 N.W.3d at 158-59. Indeed, in light of <u>Shah</u>, the majority's observation that "[i]f [State Farm] had intended to . . . restrict assignments, the language is not as clear and unambiguous as it should be" is without basis.

In the end, the majority's analysis does not and cannot unearth an ambiguity. Because our duty is to enforce texts that are clear and unambiguous, we would affirm the trial court's decision. See <u>Bates</u>, 156 N.H. at 722.

We respectfully dissent.