*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DALAL ABDELMAGUID, Personal Representative of the ESTATE OF MAGED ABDELMAGUID,

Plaintiff-Appellee,

FOR PUBLICATION
February 8, 2024

v

DIMENSIONS INSURANCE GROUP, LLC, doing business as TRM OF OHIO,

Defendant-Appellant.

No. 361674
Wayne Circuit Court
LC No. 21-017604-NI

Before: CAMERON, P.J., and BORRELLO and O'BRIEN, JJ.

CAMERON, P.J. (*concurring in part and dissenting in part*).

In this tort action arising out of a trucking accident, the insured had a $1 million primary insurance policy and a $2 million excess policy. The underlying case was settled quickly for $5 million—more than both policy limits combined. The agreement included a term wherein plaintiff agreed that it would collect $1 million (the primary policy limit), and not pursue any further recovery against the insured for the outstanding $4 million in damages. In return, plaintiff received an assignment of rights from the insured. Plaintiff then used the assignment to sue the insurance agent who it alleged had negligently procured an *excess* insurance policy. According to plaintiff, the insurance agent failed to communicate the terms of the excess policy, resulting in the denial of the insured's claim. In terms of damages, the complaint alleged that the insurance agent's negligence had caused the insured to be underinsured, resulting in inadequate coverage to pay for the judgment in the underlying case. In other words, plaintiff asserted that its damages were the uncollected $4 million judgment, even though the underlying assignment agreement capped liability at $1 million. Defendant moved for summary disposition under MCR 2.116(C)(8), arguing plaintiff's claims were premature and legally deficient. The trial court denied the motion, which the majority affirms in this appeal.

Looking at the substance of the majority's analysis, I agree that the consent judgment arising from the assignment agreement cannot be used as the basis for damages in this case. And, although I differ with the reasons for its validity, I also agree with the majority's conclusion that the assignment agreement is presumptively valid. However, I disagree that plaintiff's complaint

-1-

was sufficient to sustain defendant's motion for summary disposition and with several propositions of law set forth in the majority opinion. I therefore concur in part, and dissent in part.

## I. SUFFICIENCY OF THE COMPLAINT

Defendant moved for summary disposition under MCR 2.116(C)(8), the purpose of which is to test the sufficiency of plaintiff's complaint. *Veritas Auto Machinery, LLC v FCA Int'l Operations, LLC*, 335 Mich App 602, 607; 968 NW2d 1 (2021). Plaintiff's complaint alleged negligence, breach of fiduciary duty and misrepresentation—all of which require a plaintiff to plead damages. *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020); *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 552; 942 NW2d 696 (2019); *Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 38-39; 761 NW2d 151 (2008). The damages alleged in plaintiff's complaint were predicated entirely on the $5 million consent judgment. But, as the majority correctly concludes, the consent judgment cannot be used in this litigation as evidence of damages. This, of course, leads to the natural conclusion that the complaint in this case is defective to the extent it relies on the consent judgment as the basis for damages.

The majority and I disagree about the significance of this defect. I believe that plaintiff's complaint is fatally deficient because it relies on the $5 million assignment agreement as its sole evidence of damages. When we remove the consent judgment from consideration, plaintiff did not allege any other damages in connection with its claims. Therefore, the complaint is fatally flawed such that the trial court was required to have granted the (C)(8) motion for summary disposition and, in my view, erred when it concluded otherwise. On this conclusion alone, I would reverse the trial court's order denying summary disposition.

The restrictive terms of the assignment agreement shed light on why plaintiff has not alleged other damages in its complaint. The assignment agreement stated, in part: "Assignee [(plaintiff)] specifically agrees not to take *any* action to collect on any unsatisfied balance of the Consent Judgment in excess of the $927,377.93 paid under the remaining available insurance coverage, so long as assignor cooperates in [plaintiff's] pursuit of the assigned claims." (Emphasis added). Here, it is undisputed the insured has fully cooperated with plaintiff's assigned claims.[1] More importantly, plaintiff has agreed "not to take *any* [further] action to collect on any unsatisfied balance of the Consent Judgment." This agreement renders the unsatisfied $4 million balance uncollectable and, for plaintiff's purposes, meaningless. Ironically, plaintiff seeks to use the very same unenforceable judgment that it helped create, and promised not to enforce, against a third party who was not a party to the assignment agreement.

---

[1] At oral argument, plaintiff explained that the insured's cooperation (or lack of cooperation) is irrelevant to the viability of its claims against the insurance agent. To the contrary, plaintiff insists that damages are the uncollected $4 million judgment that would have been paid by his excess carrier, in whole or in part, had it not been for the negligence of the insurance agent.

## II. VALIDITY OF THE ASSIGNMENT AGREEMENT

Turning to the assignment agreement, I agree that it is valid, but for reasons that differ from the majority. Michigan has a long-standing principle that parties hold a general freedom of contract. See, e.g., *Corwin v DaimlerChrysler Ins Co*, 296 Mich App 242, 256; 819 NW2d 68 (2012); quoting *Rory v Continental Ins Co*, 473 Mich 457, 469; 703 NW2d 23 (2005) ("It is a 'bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent . . . a contract in violation of law or public policy.' "). Here, the assignment agreement was a contract between plaintiff and the insured. As such, courts are obligated to enforce the contract by its plain terms. See *Davis v LaFontaine Motors, Inc*, 271 Mich App 68, 73; 719 NW2d 890 (2006) ("Courts must discern the parties' intent from the words used in the contract and must enforce an unambiguous contract according to its plain terms."). I therefore disagree that the assignment agreement is valid for "policy" reasons. Rather, I believe that upholding the assignment agreement on the basis of policy runs contrary to our jurisprudence. I would instead rely on well-established principles of contractual interpretation to enforce the assignment agreement. Plaintiff and the insured executed a valid contract and, therefore, courts are obligated to enforce it.

## III. POLICY

I am also not persuaded that the stated "policy" supporting such assignments are applicable to this case. The majority cites to a number of cases from other states that have permitted these assignment agreements. These sister states hold that policy necessitated upholding an assignment agreement to prevent negligent parties from escaping liability. E.g. *Stateline Steel Erectors, Inc v Shields*, 150 NH 332, 336; 837 A2d 285 (2003). But none of the foreign cases cited by the majority opinion involve an excess insurance policy. Instead, those cases concern plaintiffs who, unlike plaintiff in this case, were left without any possibility of renumeration because the primary insurer had denied coverage. Here, plaintiff recovered the entire coverage amount under the insured's primary insurance policy. Thus, the majority's reliance on the foreign cases' policy reason— preventing a negligent party from escaping liability—is distinguished from our plaintiff, who was not left without insurance coverage.

Like the majority, I am concerned about the risk of fraud or collusion underlying this agreement. The majority cites to *Stateline Steel Erectors, Inc*, 150 NH at 336, which warns "there is a real risk of collusion" when "the insured, who is the tortfeasor, and the injured party . . . enter into a prejudgment release and a covenant not to execute in favor of the tortfeasor." (Citation omitted). This is exactly what happened here. Unlike the majority, my concerns about collusion are not assuaged because the primary carrier agreed to settle the case for the $1 million policy limit. At best, the insurer's decision reflects its assessment that its liability for damages exceed the $1 million policy limit. It does not, however, suggest that the $5 million damages figure was above board. To the contrary, the parties acted entirely consistent with their economic incentives. The insured's incentive was to resolve the case within the $1 million primary policy, which it did. There is little reason to believe that the insured, a small trucking company, would be particularly concerned about whether the settlement agreement included damages of $5 million or $20 million, so long as plaintiff agreed it would not pursue those damages against the insured. On the other hand, plaintiff's incentive was, quite correctly, to maximize recovery for the estate. When a plaintiff is structuring a settlement agreement with an eye for using the agreement as the measure

of damages against a third party that is not yet a party to the litigation, the risk of fraud and collusion is obvious.[2]

        For these reasons, I concur in part and dissent in part.

                        /s/ Thomas C. Cameron

---

[2] Litigants with adversarial interests routinely use our court rules in a way that would have eliminated my concerns of fraud and collusion in this case. For instance, when plaintiff in the underlying case discovered that the insurance agent had potential liability arising from this accident, plaintiff should have sought leave to amend the complaint to add defendant to the case. Similarly, the insured could have moved to join defendant as a third-party defendant. See MCR 2.204. Needless to say, this was not done.