*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DALAL ABDELMAGUID, Personal Representative
of the ESTATE OF MAGED ABDELMAGUID,

　　　　　Plaintiff-Appellee,

v

DIMENSIONS INSURANCE GROUP, LLC, doing
business as TRM OF OHIO,

　　　　　Defendant-Appellant.

FOR PUBLICATION
February 8, 2024
9:00 a.m.

No. 361674
Wayne Circuit Court
LC No. 21-017604-NI

Before: CAMERON, P.J., and BORRELLO and O'BRIEN JJ.

BORRELLO, J.

In this tort action, defendant, Dimensions Insurance Group, LLC, doing business as TRM of Ohio, appeals by leave granted[1] the May 16, 2022 order denying defendant's motion for summary disposition under MCR. 2.116(C)(8) (failure to state a claim on which relief could be granted). On appeal, defendant argues the trial court should have granted defendant's motion because plaintiff, Dalal Abdelmaguid, (Dalal) acting as personal representative of the Estate of Maged Abdelmaguid, (Maged) failed to allege any damages, which resulted in the tort claims being impermissible as a matter of law and unripe. Defendant alternatively argues the trial court should have granted summary disposition of plaintiff's breach-of-fiduciary-duty and misrepresentation claims because they were abandoned, and this Court should instruct the trial court not to allow plaintiff to amend the complaint because such would be futile. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Pure Transportation, LLC, owned at least one semitruck, which was driven by employees delivering goods. Beginning in 2014, Pure Transportation began working with defendant, an

---

[1] *Estate of Abdelmaguid v Dimensions Ins Group, LLC*, unpublished order of the Court of Appeals, entered October 5, 2022 (Docket No. 361674).

independent insurance agent, to obtain "business automobile, trucking and other insurance" coverage. Defendant informed Pure Transportation the maximum amount of liability coverage it could obtain in a primary insurance policy was $1 million. Pure Transportation purchased such coverage through defendant at all times relevant here. When the subject automobile accident occurred, the primary coverage was provided by the Insurance Company of the State of Pennsylvania (ICSOP).

In January 2017, Pure Transportation contacted defendant about obtaining supplemental insurance coverage, which was referred to as "an Excess Liability Insurance Policy." The excess policy was purchased by defendant on behalf of Pure Transportation through Hallmark Insurance Company. The Hallmark Insurance policy had a limit "of $2,000,000 which provided excess limits beyond the $1,000,000 Primary Policy insured by ICSOP, bringing the total limits to $3,000,000." Defendant did not inform Pure Transportation of any limitations or exceptions to the excess policy. Further, Pure Transportation "at no time requested that the coverage be limited to any client or project and instead, expected that there be full coverage up to the limits of the excess Policy for all motor vehicles, regardless of the client or use of any vehicle." Defendant never sent the actual policy with Hallmark Insurance to Pure Transportation. Unbeknownst to Pure Transportation, the excess policy had a "Designated Shipper Limitation Endorsement," which barred coverage unless Pure Transportation provided a bill of lading to the designated shipper.

On March 8, 2018, Maged was a passenger in a semitruck owned by Pure Transportation and driven by Mawlwood Zankanawi. While driving through Ohio, Zankanawi lost control of the semitruck and crashed into the concrete wall dividing the highway. Maged was crushed inside of the cab of the semitruck and later died. Dalal, Maged's widow, was appointed as the personal representative of Maged's estate on February 20, 2019.

Plaintiff sued Pure Transportation and Zankanawi in Wayne Circuit Court. Pure Transportation notified defendant of the accident and claim, and defendant notified ICSOP and Hallmark Insurance of the same. There were no issues with ICSOP, but Hallmark Insurance denied coverage under the excess policy on the basis of the designated shipper endorsement. In December 2021, plaintiff and Pure Transportation agreed to settle the lawsuit. Before the consent judgment was entered, plaintiff and Pure Transportation entered into a "Release Agreement and Assignment of Rights and Interest of Legal Claims." The agreement indicated that, in exchange for a release of plaintiff's claims against Pure Transportation, it would "unconditionally assign, transfer and convey all rights [Pure Transportation] has or may have under the [excess] Policy and any breach of contract or other legal claims against Hallmark and any insurance agent(s) or broker(s), including but not limited to [defendant] . . . ."

Thus, plaintiff agreed to enter into a consent judgment with Pure Transportation finding Pure Transportation liable to pay $5 million in damages. Pure Transportation agreed to pay plaintiff $927,377.93 on the judgment, which was the remaining coverage available under the primary policy with ICSOP after covering Pure Transportation's defense. That payment, in addition to the assignment of rights, "shall cause the Consent Judgment . . . to be satisfied as to" Pure Transportation. The document contained the following clauses regarding the assignment of rights:

**1. Assignment of Rights.**

-2-

Subject to, the terms and conditions of this Assignment, [Pure Transportation] agrees to, and hereby does assign, transfer and convey to [plaintiff], and [plaintiff] agrees to accept, and hereby does accept from [Pure Transportation], all of [Pure Transportation]'s rights to any and all existing, potential, known or unknown causes of action(s) in tort, contract, for declaratory relief, misrepresentation, fiduciary liability, fraud or otherwise to pursue any claim [Pure Transportation] has or may have against Hallmark [Insurance] and/or [defendant] arising out of or related in any way to the [excess] Policy or the existence or nonexistence of or the inadequacy of coverage.

In consideration thereof, and subject to the conditions of this Assignment, [plaintiff] agrees to and hereby does release [Pure Transportation] of and from any liability for damages, including the above referenced Consent Judgment, arising out of the Accident which are uninsured under the Policy in excess of the $927,377.93 payment referenced in this agreement.

[Plaintiff] specifically agrees not to take any action to collect on any unsatisfied balance of the Consent Judgment in excess of the $927,377.93 paid under the remaining available insurance coverage, so long as [Pure Transportation] cooperates in [plaintiff]'s pursuit of the assigned claims.

The consent judgment of $5 million in favor of plaintiff was entered on December 17, 2021, and referenced the release agreement and assignment of rights. Specifically, the consent judgment noted ICSOP "has extended coverage for its policy limits of $1,000,000 which it has tendered to Plaintiff, less an eroded amount of $72,622.07, i.e., $927,377.93, and will be distributed to the estate." Further, the consent judgment acknowledged there were potential legal claims against defendant, which had been assigned from Pure Transportation to plaintiff. On the basis of the agreement between plaintiff and Pure Transportation, the trial court entered judgment in favor of plaintiff for $5 million and closed the case.

Plaintiff sued defendant in the instant case on December 28, 2021. Plaintiff alleged one count each of negligence, breach of fiduciary duty, and misrepresentation. For all of these claims, plaintiff relied on the assignment of rights from Pure Transportation. As to the negligence count, plaintiff asserted defendant "had a professional special relationship with" Pure Transportation, which imposed certain duties on defendant. Specifically, defendant had a duty "to act as a reasonably prudent independent insurance agency in like or similar circumstances in procuring and effectuating coverage through insurance companies . . . ." Defendant breached the duty by failing to obtain the coverage Pure Transportation requested, explaining the coverage to Pure Transportation, and delivering the excess policy to Pure Transportation. These breaches were the proximate cause of damage to Pure Transportation in the form of Pure Transportation "being underinsured for its liability for the Accident, up to amounts exceeding the amounts paid under the Primary Policy."

The breach-of-fiduciary-duty claim was quite similar, though plaintiff alleged defendant's fiduciary duty to Pure Transportation was to provide the most comprehensive coverage and to adequately represent Pure Transportation's interests when obtaining insurance coverage. Under applicable law, plaintiff asserted defendant was the legal agent of Pure Transportation. Plaintiff

argued defendant breached the fiduciary duties it owed Pure Transportation, which caused Pure Transportation to suffer damages. The third and final count of the complaint asserted defendant made innocent or intentional misrepresentations to Pure Transportation about the scope of the coverage available under the excess policy with Hallmark Insurance. Pure Transportation detrimentally relied on those misrepresentations, which they argued, was reasonable under the circumstances.

In lieu of answering the complaint, defendant moved for summary disposition under MCR 2.116(C)(8). Defendant argued plaintiff's claims were premature and legally deficient. First, defendant claimed plaintiff's tort claims were required to fail because Pure Transportation had not suffered any damages. Defendant noted damages were an essential element of every tort claim, and plaintiff's assertions of Pure Transportation's rights against defendant required Pure Transportation to have suffered some form of damages. They further noted that plaintiff settled its lawsuit against Pure Transportation, which included an agreement not to pursue any claims against Pure Transportation above the policy amount already paid by ICSOP. Consequently, under the terms of the consent judgment and release agreement, Pure Transportation could not possibly suffer a loss because of a purportedly improper excess insurance policy. Anticipatory or speculative damages were not sufficient to survive a motion for summary disposition. Further, conclusory statements of being damaged in a complaint were not enough to warrant denial of a motion for summary disposition.

Second, defendant argued that summary disposition under (C)(8) was also appropriate, defendant argued, under the ripeness doctrine. Defendant claimed the dispute raised by plaintiff in the present case would not become ripe until Pure Transportation was required to pay a claim that otherwise would have been covered by the excess policy. Pure Transportation had not been asked to do so here considering the terms of the consent judgment. The dispute was also unripe because plaintiff never litigated the coverage denied by Hallmark Insurance. Defendant argued just because Hallmark Insurance denied coverage did not actually mean such coverage did not exist. Absent an adjudication of the policy terms between Pure Transportation and Hallmark Insurance, litigation of whether defendant obtained an insufficient policy for Pure Transportation simply was not ripe for review by the courts. Notably, Pure Transportation also assigned any legal rights against Hallmark Insurance to plaintiff, which plaintiff had not pursued. Defendant encouraged the trial court to grant its motion for summary disposition, and to decline any opportunity for plaintiff to amend the complaint. Defendant argued any amendment would be futile because Pure Transportation simply had yet to suffer any damages.

Plaintiff responded to defendant's motion for summary disposition on March 17, 2022. Plaintiff argued defendant's motion should be denied solely on the basis of one case, *Stephens v Worden Ins Agency, LLC*, 307 Mich App 220; 859 NW2d 723 (2014). In pertinent part, plaintiff insisted the *Stephens* case established that a claim of negligent procurement of an insurance policy by an insurance agent accrues when coverage under the relevant policy is denied. At that moment, and not when an actual monetary injury occurs, any speculative injury becomes certain. The existence of a settlement between an injured party and the insured did not change the outcome in *Stephens*. Therefore, contrary to the argument by defendant, Pure Transportation suffered an actual and actionable injury when Hallmark Insurance denied coverage under the excess policy. In arguing the opposite, defendant relied on unpublished cases or law from foreign jurisdictions.

Defendant contended *Stephens* was factually and legally distinguishable from the present case. Importantly, defendant argued, this Court in *Stephens* was never asked to determine whether an insured suffered damages in a tort claim under the circumstances presented here.

After considering the parties' arguments and briefs, the trial court ruled from the bench. The trial court determined *Stephens* was legally binding precedent rejecting defendant's assertion that because the facts were not identical Stephens had no binding effect. Thus, Pure Transportation suffered an injury when Hallmark Insurance denied coverage under the excess policy. Because plaintiff stood in Pure Transportation's shoes in this litigation, plaintiff had pleaded a prima facie negligence claim. The trial court also informed defendant its motion for leave to supplement its brief on appeal was denied. The trial court stated it had not considered the supplemental brief or its cited caselaw: "In this Court's opinion, they really need not be considered in this incident, but Motion to for [sic] Leave to File was not put on the docket and it was not properly noticed and was not—so that entire issue was not considered." As indicated above, leave was granted and this appeal ensued.

## II. ANALYSIS

"We review de novo a circuit court's summary disposition decision." *Nyman v Thomson Reuters Holdings, Inc*, 329 Mich App 539, 543; 942 NW2d 696 (2019). "MCR 2.116(C)(8) mandates summary disposition if the opposing party has failed to state a claim on which relief can be granted." *Veritas Auto & Machinery, LLC v FCA Int'l Operations, LLC*, 335 Mich App 602, 607; 968 NW2d 1 (2021) (quotation marks and citation omitted). "A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings." *Nyman*, 329 Mich App at 543. "Under Subrule (C)(8), we accept all well-pleaded factual allegations as true to determine the legal sufficiency of the complaint." *Farish v Dep't of Talent & Economic Dev*, 336 Mich App 433, 439 n 3; 971 NW2d 1 (2021). "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Veritas Auto Machinery*, 335 Mich App at 607 (quotation marks and citation omitted).

In their appeal, defendant argues that the trial court should have granted their motion for summary disposition because plaintiff failed to, and could not possibly, plead damages for the tort claims. Because defendant moved the trial court for summary disposition under MCR 2.116(C)(8), this Court's review is limited to the pleadings. *Nyman*, 329 Mich App at 543. "Thus, a party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions." *Veritas Auto Machinery*, 335 Mich App at 607 (quotation marks, citation, and alterations omitted). However, when "a claim or defense is based on a written instrument, a copy of the written instrument or its pertinent parts must be attached to the pleading . . . ." MCR 2.113(C)(1). In such circumstances, the document attached to the pleading "is a part of the pleading for all purposes." MCR 2.113(C)(2). Here, plaintiff's claims are based on the consent judgment from the litigation with Pure Transportation, and the assignment of rights from Pure Transportation to plaintiff. Both of those documents were attached to the complaint, and thus, are considered part of the pleadings for purposes of this review. *Id*.; see also *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007) (holding a document on which a claim is based "becomes part of the pleadings themselves, even for purposes of review under MCR 2.116(C)(8)")(2007).

Defendant sought summary disposition of all of plaintiff's claims, which included one count each of ordinary negligence, breach of fiduciary duty, and misrepresentation. "To establish a prima facie case of negligence, a plaintiff must prove the following elements: (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Nyman*, 329 Mich App at 552 (quotation marks and citation omitted). "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020). With respect to plaintiff's claim of misrepresentation, the complaint alleges both intentional and innocent misrepresentation. For a claim of intentional misrepresentation, or fraud,

> a plaintiff must prove that (1) the defendant made a material representation, (2) the representation was false, (3) the defendant knew that it was false when it was made, or made it recklessly, without any knowledge of its truth and as a positive assertion, (4) the defendant made the representation with the intention that the plaintiff would act on it, (5) the plaintiff acted in reliance on it, and (6) the plaintiff suffered injury because of that reliance. [*Zaremba Equip, Inc v Harco Nat'l Ins Co*, 280 Mich App 16, 38-39; 761 NW2d 151 (2008).]

Innocent misrepresentation, on the other hand, requires proof of the following elements: "(1) the defendant made a material representation, (2) the representation was false, (3) the defendant made it with the intention of inducing reliance by the plaintiff, (4) the plaintiff acted in reliance on the representation, and (5) the plaintiff thereby suffered an injury that benefited the defendant." *Id*. at 39.

As relevant to the present appeal, an injury or damages is a necessary element of each of plaintiff's claims against defendant. In defendant's motion, it argued plaintiff had not pleaded damages, which warranted summary disposal of all of plaintiff's claims. Defendant alleged, given the procedural posture of the underlying lawsuit between plaintiff and Pure Transportation, plaintiff could not possibly plead a legally valid claim of damages because, defendant argues, damages in a tort action are not presumed, and instead, must be proven. *Doe v Henry Ford Health Sys*, 308 Mich App 592, 602; 865 NW2d 915 (2014). Further, damages must be on the basis of "an actual, present injury." *Id*. at 600. " 'It is a *present* injury, not fear of an injury in the future, that gives rise to a cause of action under negligence theory.' " *Id*., quoting *Henry v Dow Chemical Co*, 473 Mich 63, 71-72; 701 NW2d 684 (2005).

We agree with defendant that in a tort action plaintiff is required to plead damages. *Doe*, 308 Mich App at 602. However, having established plaintiff was required to plead damages for all of the tort claims, it is important to note the type of damages plaintiff alleges exists. Pertinently, plaintiff brought the present suit solely as the assignee of Pure Transportation. " 'An assignee stands in the position of the assignor, possessing the same rights and being subject to the same defenses.' " *Fed Home Loan Mortg Corp v Werme*, 335 Mich App 461, 471; 966 NW2d 729 (2021), quoting *Burkhardt v Bailey*, 260 Mich App 636, 653; 680 NW2d 453 (2004). In the context of an assignment, "if an insured's claim is substantively barred on the merits, any derivative claims necessarily fail as well." *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 524; 895 NW2d 188 (2016). Therefore, to survive defendant's motion for summary disposition, plaintiff,

as the assignee, was required to plead a claim of damages suffered by Pure Transportation, the assignor. *Werme*, 335 Mich App at 471, bringing us to the crux of this matter.

Defendant's position is, Pure Transportation has not and could not suffer any damages with respect to the particular wrongs alleged by plaintiff. Plaintiff argues to the contrary, and the trial court agreed with plaintiff. To determine whether the trial court reached the correct decision, a summary of the facts assuming the well-pleaded allegations of the complaint are true, *Farish*, 336 Mich App at 439 n 3, is required. Defendant is an independent insurance agent. Defendant worked with Pure Transportation to find insurance coverage for Pure Transportation's trucking business. On behalf of Pure Transportation, defendant obtained a primary insurance policy with $1 million of coverage through ICSOP. When Pure Transportation asked for supplemental coverage through defendant, Hallmark Insurance was contacted for an excess policy. Pure Transportation believed it was clear it was requesting an excess policy covering all aspects of Pure Transportation's business without any pertinent exceptions or exclusions. Defendant obtained the excess policy from Hallmark Insurance, which contained coverage for liability of $2 million beyond the $1 million coverage in the primary policy. The excess policy, though, contained an endorsement, the specifics of which are not relevant in this appeal. Defendant never provided the policy with Hallmark Insurance to Pure Transportation.

Plaintiff's decedent was killed while a passenger in a semitruck owned by Pure Transportation and driven by an employee of Pure Transportation. The negligence of the driver, Zankanawi, caused the crash, and Pure Transportation was vicariously liable for Zankanawi's negligent driving. Plaintiff sued Pure Transportation and Zankanawi in Wayne Circuit Court. Pure Transportation notified defendant of the crash and lawsuit. Defendant notified ICSOP and Hallmark Insurance. ICSOP agreed the accident was covered under Pure Transportation's primary insurance policy with ICSOP. Hallmark Insurance, on the other hand, denied coverage under an endorsement. Pure Transportation was not aware of the endorsement, and therefore, expected to be covered for an additional $2 million for the loss.

In the underlying case, ICSOP defended Pure Transportation under the terms of the primary insurance policy. Hallmark Insurance, considering it had denied coverage, did not participate in the litigation. ICSOP spent $72,622.07 in defense of Pure Transportation. Eventually, plaintiff reached a settlement with Pure Transportation. The settlement involved a consent judgment against Pure Transportation and in favor of plaintiff for $5 million. In correlation with the consent judgment, plaintiff and Pure Transportation entered into a "Release Agreement and Assignment of Rights and Interest of Legal Claims." According to that document, which refers to Pure Transportation as "Assignor," and plaintiff as "Assignee," Pure Transportation agreed to "assign, transfer and convey . . . all of [its] rights . . . to pursue <u>any</u> claim [it] has or may have against" Hallmark Insurance or defendant. On the other hand, plaintiff agreed, "subject to the conditions" of the assignment, to "release [Pure Transportation], [] Zankanawi, [and] ICSOP . . . from any liability for damages, including the above referenced Consent Judgment, arising out of the Accident which are uninsured under the Policy in excess of the $927,377.93 payment referenced in this agreement." The referenced payment was the remaining coverage available under the $1 million primary policy with ICSOP after paying for the defense of Pure Transportation.

In the next paragraph of the document, the terms of the "release" were clarified: "[Plaintiff] specifically agrees not to take any action to collect on any unsatisfied balance of the Consent

Judgment in excess of the $927,377.93 paid under the remaining available insurance coverage, so long as [Pure Transportation] cooperates in [plaintiff]'s pursuit of the assigned claims." Under the heading of "Covenants and Conditions," the parties reiterated Pure Transportation's responsibilities under the agreement to be entitled to a release of liability: "[Pure Transportation] agrees that this Agreement and the release contained herein, is expressly contingent upon [Pure Transportation]'s lawful cooperation in any legal proceedings of [plaintiff] against Hallmark" or defendant. This "cooperation" included "testifying or otherwise cooperating about the truth of the matters asserted."

The referenced consent judgment for $5 million in favor of plaintiff was issued on December 17, 2021. As with the assignment of rights, the consent judgment referenced potential claims against Hallmark or defendant "related to the Excess Policy and/or the lack of excess coverage for the Motor Vehicle Accident." The consent judgment acknowledged the assignment of rights, characterizing it as containing "a conditional release of Pure [Transportation] in exchange for an unconditional assignment, transfer and conveying of <u>all</u> rights" Pure Transportation has to pursue claims against Hallmark and defendant.

Defendant argues that it is possible for Pure Transportation to suffer damages caused by the torts alleged in this case. Defendant notes plaintiff's claims are entirely reliant on Pure Transportation's assignment of rights. Thus, if Pure Transportation did not and could not suffer any damages from the wrongs alleged, plaintiff's claims must also fail. The basis of plaintiff's claim is that Pure Transportation requested coverage in the form of an excess policy from defendant. Pure Transportation did not want any limitations on the policy, which would have resulted in it covering the accident at issue in the present case. However, the excess policy for $2 million of liability coverage obtained by defendant from Hallmark Insurance contained such an endorsement, which caused Hallmark Insurance to deny coverage. Plaintiff contends, then, that defendant negligently procured the policy from Hallmark Insurance. Pertinently, plaintiff argues defendant had duties to get the coverage Pure Transportation requested, to explain the coverage to Pure Transportation, and to send the actual excess policy to Pure Transportation. Plaintiff contends defendant had general duties to Pure Transportation and some fiduciary duties and the breach of those duties caused Pure Transportation to be underinsured. Plaintiff also claims defendant either innocently or intentionally misrepresented the policy it obtained from Hallmark Insurance, Pure Transportation reasonably relied on the representations, and Pure Transportation suffered harm by being underinsured because of defendant's misrepresentations.

However, defendant argues that even if it did acquire the wrong policy, make misrepresentations, or breach any of its purported duties in any of the ways alleged by plaintiff, Pure Transportation has yet to suffer any damages caused by that specific negligence. And, moreover, by the terms of the consent judgment and assignment of rights, Pure Transportation was no longer exposed to any liability that would qualify as damages with respect to the present lawsuit. In support of this argument, defendant notes the assignment of rights contains a correlated release of liability for Pure Transportation. This release indicated Pure Transportation will never be asked to pay the consent judgment of $5 million beyond the amount distributed by ICSOP under the primary insurance policy. Because Pure Transportation will never face a loss beyond the $1 million coverage included in the primary policy, the excess policy would not be implicated.

Plaintiff contends this entire dispute is covered in a dispositive fashion by this Court's opinion in *Stephens*, 307 Mich App 220. Defendant disagrees for a variety of reasons. The trial

court concluded it was bound by *Stephens* when denying defendant's motion for summary disposition.

The *Stephens* Court contemplated when a negligence claim accrued. *Id*. at 235. "The accrual of claims subject to this statutory period is governed by MCL 600.5827." *Stephens*, 307 Mich App at 235. Under the relevant statute, the general rule for accrual states " 'the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results.' " *Id*., quoting MCL 600.5827. Because no exceptions applied "to general negligence claims or more specifically to negligent-procurement or -advice claims against an insurance agent," the general rule controlled. *Stephens*, 307 Mich App at 235. "Accordingly, Stephens's claims accrued 'at the time the wrong upon which the claim is based was done regardless of the time when damage results.' " *Id*., quoting MCL 600.5827. This Court then provided caselaw regarding the "wrong" referenced in the statute and when an ordinary negligence claim accrues in Michigan:

> "For purposes of MCL 600.5827, the term 'wrong' refers to *the date on which the plaintiff was harmed by the defendant's act*, not the date on which the defendant acted negligently because that would permit a cause of action to be barred before any injury resulted." *Schaendorf v Consumers Energy Co*, 275 Mich App 507, 512; 739 NW2d 402 (2007) (emphasis added). A tort claim accrues "when all the elements of the claim have occurred and can be alleged in a proper complaint." *Id*. See also *Stephens v Dixon*, 449 Mich 531, 534-535; 536 NW2d 755 (1995). Damages may recur after a claim accrues. But there must be an initial injury for a claim to exist and it is that injury that triggers the running of the limitations period. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 289-290; 769 NW2d 234 (2009). [*Stephens*, 307 Mich App at 235-236.]

This Court then turned to the more specific question of when the wrong occurred to Fritz, because Stephens was suing on the basis of an assignment of rights from Fritz. *Id*. at 236-237.

Although the facts of *Stephens* are strikingly similar to the present case, it involves a primary insurer instead of an excess policy. However, despite the obvious factual similarities, when considering the *legal* questions answered by this Court in *Stephens*, it appears defendant is correct that the case is not determinative. In addition to other less relevant decisions, this Court in *Stephens* was asked to determine a particular legal question: When did Stephens's claims accrue, as related to the statute of limitations? *Id*. at 236. In deciding the question, this Court used language plaintiff now hopes to apply in the present case. Specifically, plaintiff notes this Court stated that, on the date an insurer denies an insured's claim, "any speculative injury becomes certain, and the elements of the negligence action are complete." *Id*. at 236-237. Notably, this holding directly belies defendant's argument Pure Transportation was never damaged because it never faced liability above $1 million, which is when the excess policy would be implicated. Taking this Court's decision at its word would indicate Pure Transportation was injured when Hallmark denied coverage under the excess policy. Plaintiff encourages this Court to adopt this understanding of *Stephens*.

As noted, though, the legal question being decided by this Court in *Stephens*, 307 Mich App at 236, is not the same issues presented in this case. It is undoubtedly true that this Court in *Stephens* was presented with a factual scenario in which it could have decided the question presented here.

However, when considering this Court clearly stated that, in a case like this one, an insured is harmed at the moment the insurer denies a claim. Because that legal conclusion was necessary to the ultimate decision reached by the *Stephens* Court, it is not obiter dictum and the rule of stare decisis applies. *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563-564; 741 NW2d 549 (2007). Thus, if the present case contained an issue asking when Pure Transportation was harmed for purposes of the statute of limitations, this Court would be bound to follow *Stephens*, 307 Mich App at 236-237. *Griswold Props*, 276 Mich App at 563-564. Hence, *Stephens* is generally binding, but not decisive in the present case. Specifically, although a negligence claim may accrue at a given time, which necessarily means an actual and present injury occurred, later events can cause the initially harmed party to suffer no actual monetary damages. As our Supreme Court has noted, there is a "distinction between an 'injury' and the 'damages' flowing therefrom . . . ." *Henry*, 473 Mich at 75. Here, defendant contends no damages flowed from the purported injury caused by defendant negligently procuring the excess policy for Pure Transportation. As established above, all of the tort claims asserted by plaintiff require proof of actual damages. Consequently, the absence of damages at the time the complaint was filed was the issue presented in the instant case, and such was not decided in *Stephens*.

Having determined *Stephens*, 307 Mich App at 236-237, is not controlling in this case, this Court must next address whether cases such as this one will be permitted in Michigan. Other than plaintiff's reliance on *Stephens*, the parties generally agree the factual scenario and legal questions presented in this case have not been addressed by an appellate court in Michigan. Given the lack of caselaw on this exact topic in Michigan, the parties turn to analysis of cases from other states. "Although we are not bound by decisions from other state courts, our courts often consider decisions from other states in cases of first impression." *Farm Bureau Mut Ins Co v Buckallew*, 246 Mich App 607, 614 n 6; 633 NW2d 473 (2001). Defendant contends there is a split of authority nationally on the topic, both sides of which favor defendant. Plaintiff disagrees and argues caselaw from foreign jurisdictions actually favors plaintiff's position.

The parties focus their arguments on a decision of the Supreme Court of New Hampshire, which considered this issue and conducted a survey of how other states have handled the issue. In *Stateline Steel Erectors, Inc v Shields*, 150 NH 332, 334-336; 837 A2d 285 (2003), the New Hampshire Supreme Court stated, in relevant part:

> As this case presents an issue of first impression, we look to other jurisdictions for guidance. See [*Sintros v Hamon*, 148 NH 478, 480; 810 A2d 553 (2002)]. There is a split of authority as to whether an insured who has been released from the legal obligation to pay an excess judgment has any right against an allegedly negligent insurance agent, which could be assigned to others. The majority of jurisdictions have found such assignments valid. *See McLellan v. Atchison Ins. Agency Inc.*, [81 Hawaii 62;] 912 P.2d 559, 565 (Haw. Ct. App. 1996); *Lageman v. Frank H. Furman, Inc.*, 697 So. 2d 981 (Fla. Dist. Ct. App. 1997); *Campione v. Wilson*, [422 Mass 185;] 661 N.E.2d 658, 659-63 (Mass. 1996); *Red*

*Giant Oil Co. v. Lawlor*, 528 N.W.2d 524 (Iowa 1995) (rejecting *Freeman v. Schmidt Real Estate & Ins., Inc*, 755 F.2d 135, 136-30 [sic] (8th Cir. 1985), and holding that assignment together with covenant not to execute on excess judgment is valid); *Kobbeman v. Oleson*, 574 N.W.2d 633, 636[; 1998 SD 20] (S.D. 1998); *Tip's Package Store, Inc. v. Commer. Ins. Manag.*, 86 S.W.3d 543, 553-55 (Tenn. Ct. App. 2001); *Steinmetz v. Hall-Conway-Jackson, Inc.*, [49 Wash App 223;] 741 P.2d 1054, 1056-57 (Wash. Ct. App. 1987); *see also* Note, *Judicial Approaches to Stipulated Judgments, Assignments of Rights, and Covenants Not to Execute in Insurance Litigation*, 47 DRAKE L. REV. 853, 856-60 (1999) (trend "seems to lean overwhelmingly toward the majority rule" that upholds assignment of insurance claim accompanied by covenant not to execute on judgment). *But see Oregon Mutual Ins. Co. v. Gibson*, [88 Ore App 574;] 746 P.2d 245, 247 (Ore. Ct. App. 1987)[, rev'd by *Brownstone Homes Condo Ass'n v Brownstone Forest Hts, LLC*, 358 Ore 223; 363 P3d 467 (2015)].

Jurisdictions have used different approaches to find such assignments valid. Many jurisdictions distinguish between a release and a covenant not to execute on a judgment. In these jurisdictions, an assignment is valid if it is coupled with a covenant not to execute because the insured remains liable for the excess judgment; an assignment coupled with a release is void because the release extinguishes the insured's liability. *See, e.g., Kobbeman*, 574 N.W.2d at 637; *Lageman*, 697 So. 2d at 983; *Tip's Package Store*, 86 S.W.3d at 555. These jurisdictions deem a covenant not to execute merely a contract, not a release; if the assignee sought to collect the judgment from the insured, the insured could sue for breach of contract. *See Kobbeman*, 574 N.W.2d at 636.

In other jurisdictions, the legal basis for the insured's claim against its insurance agent still exists even though the insured is insulated from liability by either a release or a covenant not to execute. *See Campione*, 661 N.E.2d at 661-63.

A minority of jurisdictions have ruled that even a covenant not to execute extinguishes an insured's liability for an excess judgment. As the Oregon Court of Appeals has explained:

> Had [the] insurance agents procured the coverage alleged to be deficient, that coverage would not have become implicated, unless the insured became legally obligated to pay more than what was already paid on his behalf by his insurer. Under the covenant, however, he can never be required to pay any more than the coverage under the existing insurance.

*Oregon Mutual*, 746 P.2d at 247.

"For the most part, these conflicting decisions reflect a balancing of policy considerations." *Campione*, 661 N.E.2d at 662. Chief among these considerations is concern about the risk of collusion when an insured is protected from liability by a covenant not to execute or a release before entry of judgment. See *id*.

-11-

As established above, courts in other states have generally permitted lawsuits on the basis of assignments similar to the one in the present case to go forward. The "majority" approach, as described by the Supreme Court of New Hampshire, involved ensuring the assignment contained only a covenant not to sue or to execute on the excess judgment, instead of a full release of rights. *Stateline Steel*, 150 NH at 334-335. The distinction exists in states following this rule because while a release would extinguish liability for the tortfeasor, a covenant not to sue or execute on the judgment does not. *Id*. The "minority" approach, on the other hand, bars the relevant arrangement for the reasons argued by defendant in the present case—the insured will not face liability because of the terms of the covenant not to execute on the judgment, so assignee has no grounds for a lawsuit. *Id*. at 335.

Since *Stateline Steel*, was published, the minority approach has become even more of a minority. In *Stateline Steel*, 150 NH at 335, the New Hampshire Supreme Court cited the Oregon Court of Appeals, *Oregon Mut Ins Co*, 88 Or App at 578, to explain the manner in which a minority of states address the issue presented in this case. However, the Supreme Court of Oregon reversed the Oregon Court of Appeals and joined the majority approach in 2015. *Brownstone Homes*, 358 Or at 246 (holding previous Oregon courts "erred when [they] concluded that a covenant not to execute obtained in exchange for an assignment of rights, by itself, effects a complete release that extinguishes an insured's liability and, by extension, the insurer's liability as well").

In a footnote, the Oregon Supreme Court stated: "Two other courts of which we are aware have concluded that a covenant not to execute extinguishes any legal obligation to pay." *Brownstone Homes*, 358 Or at 242 n 6. Those two cases were decisions of the North Carolina Court of Appeals, *Huffman v Peerless Ins Co*, 17 NC App 292, 294; 193 SE2d 773 (1973), and the United States District Court for the Northern District of Alabama, *Bendall v White*, 511 F Supp 793, 795 (ND Ala, 1981). The decision of the North Carolina Court of Appeals appears not to have been overruled in any manner. However, the Alabama Supreme Court eventually considered the issue and held the state would join the majority in permitting an assignment in association with a covenant not to sue or execute on a judgment. *Liberty Mut Ins Co v Wheelwright Trucking Co, Inc*, 851 So 2d 466, 489-490 (Ala, 2002).

Our review of caselaw from Michigan leads us to conclude that we should adopt the majority approach. Our Supreme Court has specifically recognized, although under different circumstances, that "[t]here is a material difference between a covenant not to sue and a release." *J & J Farmer Leasing, Inc v Citizens Ins Co of America*, 472 Mich 353, 357; 696 NW2d 681 (2005). While "[a] release immediately discharges an existing claim or right . . . , a covenant not to sue is merely an arrangement not to sue on an existing claim." *Id*. at 357-358. In other words, a covenant not to sue or execute on a judgment "does not extinguish a claim or cause of action." *Id*. at 358. The distinction between the two, our Supreme Court noted, "primarily affects third parties, rather than the parties to the agreement." *Id*., citing *Theophelis v Lansing General Hospital*, 430 Mich 473, 492 n 14; 424 NW2d 478 (1988). Consequently, the logic from the majority approach applies in Michigan because, when there is a covenant not to sue or to execute on an excess judgment in exchange for an assignment of rights, the liability of the assignor has not been extinguished. *J & J Farmer Leasing, Inc*, 472 Mich at 357.

Courts adopting the minority approach were primarily concerned about collusive settlements between an injured party and the insured, which would then be used to hold the insurer

or insurance agent liable.  We are similarly concerned. While we agree with defendant that such concerns are valid, adoption of the majority approach does not ignore such concerns.  Instead, rather than barring such assignments, courts in the majority foresaw other mechanisms in which entities in the position of defendant will be able to protect themselves from collusion and fraud. The New Hampshire Supreme Court once again provided a persuasive analysis of the subject:

> In our view, the benefits of such settlement agreements outweigh the risks. We believe it preferable to uphold assignments under these circumstances than to allow a negligent party to escape liability.  *See McLellan*, 912 P.2d at 565.  That Stateline never had to pay the stipulated judgment out of its own pocket is immaterial.  But for the defendants' alleged negligence, Stateline would not have had to enter into the settlement agreement.  *See Steinmetz*, 741 P.2d at 1056.

> Like other courts, we believe that the risk of collusion can be diminished by requiring the contractors to bear the burden of proof on the assigned claims and by recognizing that the defendants, who were not parties to the settlement agreement, cannot be bound by its terms.  *See Campione*, 661 N.E.2d at 663.  The defendants remain free to raise collusion or fraud as a defense.  *See id*.; *Kobbeman*, 574 N.W.2d at 636.

> To recover against the defendants, the contractors must prove the essential elements of their negligence and breach of contract claims and will have to establish that Stateline's damages exceeded its insurance coverage.  Neither the settlement agreement between the contractors and the employee nor that between the contractors and Stateline is conclusive on this point, however.  *See Campione*, 661 N.E.2d at 663; *cf. Red Giant Oil*, 528 N.W.2d at 534 (holding that judgment not adjudicated on merits is not binding on insurer in claim against insurer for failure to defend).

> We note that the risk of collusion in this case is particularly low.  In the typical case, the settlement agreement is between the insured, who is the tortfeasor, and the injured party.  *See Campione*, 661 N.E.2d at 662.  In that case, there is a real risk of collusion between the tortfeasor and the injured party when they enter into a prejudgment release and a covenant not to execute in favor of the tortfeasor. *See id*. at 663.  The amount of the judgment is determined solely by agreement of the parties. *See id*.  [*Stateline Steel*, 150 NH at 336.]

Therefore, in order to protect defendant in the present case from collusion and fraud, the consent judgment between plaintiff and Pure Transportation will not be binding on defendant, as it was not a party to the negotiations.  Further, should the present case go to trial, plaintiff will be required to bear the burden of proving all of the claims, including damages.  As discussed in greater depth above, plaintiff can only prove damages by showing Pure Transportation incurred or had liability above $1 million, which Hallmark Insurance would have refused to pay because of the negligence of defendant in procuring the policy.  Unable to rely on the consent judgment to establish $5 million of damages, plaintiff will effectively have to litigate the claims plaintiff was excused from litigating because of Pure Transportation's agreement to settle.  As explained by the New Hampshire Supreme Court, this situation protects entities in defendant's position from being

held responsible for a settlement reached through collusion or fraud. *Id*. Moreover, Michigan public policy plainly favors parties' ability to negotiate and settle their own claims without involvement of the government. *Mich Ambulatory Surgical Ctr v Farm Bureau Gen Ins Co of Mich*, 334 Mich App 622, 631; 965 NW2d 650 (2020), citing *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 52; 664 NW2d 776 (2003) ("The notion, that free men and women may reach agreements regarding their affairs without government interference and that courts will enforce those agreements, is ancient and irrefutable.").

Having concluded Michigan will join the majority of states that have addressed this particular issue, this Court must next consider defendant's alternative argument, which is the assignment of rights contains a release, not a covenant not to sue or execute the excess judgment. An assignment agreement is a contract, and must be interpreted as such. *Burkhardt*, 260 Mich App at 653. This Court recently summarized the law regarding the interpretation of contracts in *Total Quality, Inc v Fewless*, 332 Mich App 681, 694; 958 NW2d 294 (2020):

> The primary goal of contract construction is to give effect to the parties' intent. *Jay Chevrolet, Inc v Dedvukaj*, 310 Mich App 733, 735; 874 NW2d 146 (2015). To achieve this goal, the Court must read the contract language, giving it its plain and ordinary meaning. *Innovation Ventures v Liquid Mfg, LLC*, 499 Mich 491, 507; 885 NW2d 861 (2016)[, reh den 500 Mich 859 (2016)]. When the language of the contract is unambiguous, the contract must be interpreted and enforced as written. *Id*. When the contract language is subject to multiple interpretations, it is considered ambiguous. *Farmers Ins Exch v Kurzmann*, 257 Mich App 412, 418; 668 NW2d 199 (2003). "Ambiguities in a contract generally raise questions of fact for the jury; however, if a contract must be construed according to its terms alone, it is the court's duty to interpret the language." *Id*.

"When enforcing the unambiguous language of a contract, we must give effect to every word or phrase as far as practicable so as to avoid an interpretation that would render any part of the contract surplusage or nugatory." *Soaring Pine Capital Real Estate & Debt Fund II, LLC v Park Street Group Realty Servs, LLC*, 337 Mich App 529, 542; 976 NW2d 674 (2021) (quotation marks and citations omitted). As discussed above, a "release" extinguishes liability immediately, while a covenant not to sue does not. *J & J Farmer Leasing*, 472 Mich at 357-358. Pertinently, covenants not to sue can be conditional, such as in *J & J Farmer Leasing*, which was "conditioned on the [assignor] performing certain duties in the litigation against [the insurance company]." *Id*. at 358.

In the present case, the unambiguous language of the assignment agreement establishes plaintiff made a covenant not to sue or to execute on the excess judgment against Pure Transportation. Plaintiff did not release Pure Transportation from all liability. Defendant focuses on individual portions of the assignment agreement when arguing the document established a release by plaintiff. However, as noted, a contract must be read to give effect to every portion where possible, and should never render a phrase nugatory. *Soaring Pine*, 337 Mich App at 542. The assignment agreement repeatedly references Pure Transportation will only be released from paying the consent judgment if it complies with the terms of the assignment. Examples include:

In consideration [of the assignment]*, and subject to the conditions of this Assignment*, [plaintiff] agrees to and hereby does release [Pure Transportation] . . . of and from any liability for damages, including the above referenced Consent Judgment, arising out of the Accident which are uninsured under the Policy in excess of the $927,377.93 payment referenced in this agreement.

[Plaintiff] specifically agrees not to take any action to collect on any unsatisfied balance of the Consent Judgment in excess of the $927,377.93 paid under the remaining available insurance coverage, *so long as [Pure Transportation] cooperates in [plaintiff]'s pursuit of the assigned claims*.

\* \* \*

A. Each of the parties will use reasonable efforts to *take all action and to do all things necessary in order to consummate and make effective the transactions contemplated by this Assignment*.

B. [Pure Transportation] agrees that this Agreement and *the release contained herein, is expressly contingent upon its lawful cooperation in any legal proceedings of Assignee against . . . [defendant] to the extent of testifying or otherwise cooperating about the truth of the matters asserted*. (emphasis added).

As is plain, the language used by plaintiff and Pure Transportation in the assignment agreement indicates that plaintiff made a covenant not to execute on the excess consent judgment that was conditioned on Pure Transportation participating in the present litigation. On remand, should Pure Transportation refuse to take part in the litigation between plaintiff and defendant, plaintiff would not have lost the ability to demand payment of the entire $5 million judgment from Pure Transportation. Consequently, the unambiguous language of the assignment agreement shows Pure Transportation's liability *was not* extinguished. As a result, because the release does extinguish liability altogether, the agreement between the two was not a release. *J & J Farmer Leasing*, 472 Mich at 357-358. Ignoring the language requiring Pure Transportation to participate in the litigation or face liability would render portions of the assignment agreement nugatory, which this Court must not do wherever possible. *Soaring Pine*, 337 Mich App at 542. Therefore, defendant's alternative argument that plaintiff released Pure Transportation from all liability, which resulted in Pure Transportation having no damages, lacks merit.

Next, defendant argues that the trial court improperly denied defendant's motion for summary disposition on the basis of ripeness. Defendant claims plaintiff's claims are not ripe because Pure Transportation, plaintiff's assignor, has yet to suffer any damages as a result of the torts alleged in plaintiff's complaint. "The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained. A claim that rests on contingent future events is not ripe." *Shaw v City of Dearborn*, 329 Mich App 640, 657; 944 NW2d 153 (2019) (quotation marks and citation omitted). "Hence, when considering the issue of ripeness, the timing of the action is the primary focus of concern." *King v Mich State Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013) (quotation marks and citation omitted).

Contrary to defendant's argument on appeal, Pure Transportation was harmed when Hallmark Insurance denied coverage after the accident resulting in the death of plaintiff's decedent. Whether Pure Transportation suffered damages for the alleged harm purportedly caused by defendant's negligence is an issue still to be litigated.

Additionally, the language used in caselaw regarding ripeness focuses on the existence of an injury instead of the existence of damages. *Shaw*, 329 Mich App at 657. As previously discussed, our Supreme Court has specifically stated that, in the context of tort claims, an injury and the damages flowing therefrom are different things. *Henry*, 473 Mich at 75. This Court, in *Stephens*, 307 Mich App at 236-237, held an insured was injured by the negligent procurement of an insurance policy by an insurance agent on the date the insurer denied coverage. "On that date any speculative injury becomes certain . . . ." *Id*. at 237. In the present case, Pure Transportation requested defendant, an insurance agent, to procure coverage from Hallmark Insurance. Pure Transportation sought a policy covering the type of accident that eventually occurred in this case. However, defendant obtained a policy from Hallmark Insurance for Pure Transportation containing an endorsement ultimately leading to Hallmark Insurance denying coverage for the accident at issue. Despite any later events that might have altered whether Pure Transportation suffered damages, *Stephens*, 307 Mich App at 236-237, is binding as related to when Pure Transportation was injured. The parties do not dispute Hallmark Insurance denied coverage for the accident well before the present litigation was commenced. As this Court has explained, timing of an action is of the utmost importance when deciding ripeness. *King*, 303 Mich App at 188. Therefore, at the time plaintiff filed this lawsuit, Pure Transportation had been injured by defendant's purported negligence as a result of Hallmark Insurance's denial of coverage. Because plaintiff was asserting Pure Transportation's rights via an assignment, plaintiff's claim was ripe. *Shaw*, 329 Mich App at 657; *Stephens*, 307 Mich App at 236-237.

Defendant also argues the claims presented by plaintiff are unripe because Hallmark Insurance's coverage decision was never litigated. Defendant's assertion, once again, ignores the language used by this Court in *Stephens*, 307 Mich App at 236-237. Pure Transportation was injured when Hallmark Insurance denied coverage. *Id*. This Court did not indicate the denial of coverage had to be litigated before the injury occurred under the circumstances presented here. *Id*. Further, defendant undoubtedly will be permitted to litigate whether Hallmark Insurance wrongfully denied coverage as the present case proceeds. If defendant obtained an excess policy that should have covered the accident at issue, defendant would not be responsible for any of Pure Transportation's damages. However, the lack of a final adjudication regarding the merits of Hallmark Insurance's decision to deny coverage is not relevant to the issue of ripeness. *Id*. This case ripened with respect to Pure Transportation when Hallmark Insurance denied coverage. *Id*. Consequently, because plaintiff is asserting Pure Transportation's rights as its assignee, plaintiff's lawsuit also is ripe. *Shaw*, 329 Mich App at 657; *Stephens*, 307 Mich App at 236-237.

Next, defendant argues that the trial court erred when it refused to dismiss plaintiff's claims of breach of fiduciary duty and misrepresentation. Defendant contends the trial court erred by not dismissing two counts of plaintiff's complaint because of abandonment. Specifically, defendant argues that, in plaintiff's response to the motion for summary disposition, plaintiff did not address defendant's claims regarding breach of fiduciary duty and misrepresentation. Ironically, in asserting plaintiff abandoned issues during the trial court proceedings, defendant only cites caselaw regarding abandonment in this Court. In other words, the cases do not address abandoning

-16-

an issue in the trial court. Theoretically, such could be considered abandonment of the issues raised on appeal because defendant is not challenging plaintiff's briefing with this Court. Pertinently, defendant cites only *Johnson v Johnson*, 329 Mich App 110, 126; 940 NW2d 807 (2019) (stating "[w]hen a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned") (quotation marks and citation omitted); and *Oakland County v Michigan*, 325 Mich App 247, 266-267; 926 NW2d 11 (2018) (explaining "[i]t is not sufficient for a party simply to announce a position or assert an error and then leave it to up this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position") (quotation marks and citation omitted). Simply stated, neither of those cases consider when and how a party might abandon a claim in the trial court warranting its summary disposal. Instead, they address the abandonment of claims *on appeal* when they are not properly briefed by the appellant.

However, in an effort to resolve the issues before us, we consider defendant's arguments. Defendant argued plaintiff, as the assignee of Pure Transportation, could not prove damages for any of the torts alleged in the complaint. The theory of a lack of damages was the same for all of the counts of plaintiff's complaint—Pure Transportation would never face liability over $1 million because of the terms of the assignment agreement, which meant Pure Transportation's policy with Hallmark Insurance would never be implicated. In response, plaintiff argued damages were proven because this Court in *Stephens*, 307 Mich App at 236-237, stated the injury occurred when Hallmark Insurance denied coverage.

Defendant contends this response from plaintiff only addressed the negligence count of the complaint because this Court in *Stephens* only was considering an ordinary negligence claim. However, regardless of the substantive claim in the case cited by plaintiff, the response was related to defendant's argument about damages. Defendant identifies no reason why damages from an ordinary negligence claim could not be the same as those from a breach of a fiduciary duty or misrepresentation. Furthermore, plaintiff was permitted to plead alternate theories, even if they could be considered inconsistent. MCR 2.111(A)(2); *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 328; 657 NW2d 759 (2002). Indeed, multiple claims can go to the jury, on the basis of the same allegation of damages, so long as the jury does not award a double recovery. *Walraven v Martin*, 123 Mich App 342, 348-349; 333 NW2d 569 (1983).

Therefore, it was permissible for plaintiff to argue damages without specific reference to each claim, because each claim resulted in presumably identical damages. Because defendant did not differentiate between damages for different claims, plaintiff was well-supported in addressing damages generally, whether by citing one case or more. Thus, by addressing the claims regarding damages, in general, plaintiff did not enlist the trial court to be plaintiff's research assistant when responding to the motion for summary disposition. *Walters*, 481 Mich at 388. Consequently, this argument by defendant lacks merit, and the trial court properly denied summary disposition/ *Id*.

## III. CONCLUSIONS

The trial court did not err when it denied defendant's motions for summary disposition. In so concluding, we adopt the "majority" approach, as described by the Supreme Court of New Hampshire, in *Stateline Steel*, 150 NH at 334-335 in holding that an insured, who has entered into a covenant not to sue or execute on an excess judgment, has any right against an allegedly negligent

insurance agent, which could be assigned to others." *Id.*at 334. The "majority" approach, as adopted here, prevails so long as the assignment contains only a covenant not to sue or to execute on the excess judgment, instead of a full release of rights. As we have stated, Michigan public policy favors allowing the parties to settle, *Mich Ambulatory Surgical Ctr*, 334 Mich App at 631, and our caselaw acknowledges a covenant not to sue or execute on an excess judgment does not extinguish liability, *J & J Farmer Leasing*, 472 Mich at 357-358. We therefore align our State's jurisprudence with the majority of courts that have relied on these exact bases when determining that a litigant in plaintiff's position should be permitted to go forward with their litigation despite agreeing not to seek satisfaction of the judgment against the insured. See, *Stateline Steel*, 150 NH at 334-336.

Affirmed. Plaintiff having prevailed in full is entitled to costs. MCR 7.219(A).


/s/ Stephen L. Borrello
/s/ Colleen A. O'Brien